*[Counsel for Plaintiff Listed in Signature Block]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, Inc.,<br><br>       Plaintiff,<br>v.<br><br>APPLE, INC., *et al.*,<br><br>       Defendants. | Case No. 5:13-cv-01776-PSG<br><br>**PLAINTIFF'S MOTION TO CORRECT AN ASSERTED PATENT**<br><br>Hearing Date: August 26, 2014<br>Time: 10:00 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, Inc.,<br><br>       Plaintiff,<br>v.<br><br>APPLE, INC., *et al.*,<br><br>       Defendants. | Case No. 5:13-cv-01777-PSG<br><br>**PLAINTIFF'S MOTION TO CORRECT AN ASSERTED PATENT**<br><br>Hearing Date: August 26, 2014<br>Time: 10:00 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, Inc.,<br><br>       Plaintiff,<br>v.<br><br>AT&T MOBILITY LLC, *et al.*,<br><br>       Defendants. | Case No. 5:13-cv-01778-PSG<br><br>**PLAINTIFF'S MOTION TO CORRECT AN ASSERTED PATENT**<br><br>Hearing Date: August 26, 2014<br>Time: 10:00 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |

| | |
|---|---|
| ADAPTIX, Inc.,<br><br>                    Plaintiff,<br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, *et al.*,<br><br>                    Defendants. | Case No. 5:13-cv-01844-PSG<br><br>**PLAINTIFF'S MOTION TO CORRECT AN ASSERTED PATENT**<br><br>Hearing Date: August 26, 2014<br>Time: 10:00 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, Inc.,<br><br>                    Plaintiff,<br>v.<br><br>APPLE, INC., *et al.*,<br><br>                    Defendants. | Case No. 5:13-cv-02023-PSG<br><br>**PLAINTIFF'S MOTION TO CORRECT AN ASSERTED PATENT**<br><br>Hearing Date: August 26, 2014<br>Time: 10:00 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |

## <u>NOTICE OF MOTION AND MOTION TO CORRECT AN ASSERTED PATENT</u>

PLEASE TAKE NOTICE that Plaintiff, Adaptix, Inc. ("Adaptix"), moves for an order correcting an obvious typographical error in Claim 18 of Asserted Patent No. U.S. 7,454,212 ("the '212 Patent") (Foster Decl., Ex. A).  This motion will be heard on August 26, 2014, at 10:00 a.m., before the Honorable Magistrate Judge Paul S. Grewal, Courtroom 5, 4th Floor of the United States Courthouse, 280 South 1st Street, San Jose, California, 95113.  This Motion is based on the Points and Authorities below, the Declaration of Kevin Gannon in Support, and the accompanying proposed order.

## <u>REQUESTED RELIEF</u>

Adaptix requests that the Court replace an incorrect term, "subscriber units," referenced in column 18, line 4, of Claim 18, with the correct term, "subcarriers":

> wherein the subscriber unit submits updated feedback information after being allocated the set of ~~subscriber units~~ [**subcarriers**] to receive an updated set of subcarriers and thereafter receives another indication of the updated set of subcarriers.

1 | '212 Patent col. 18, ll. 2-6 (with proposed correction).

2 |      This error is evident on the face of the '212 Patent, the requested correction is obvious to a

3 | person of ordinary skill in the art in the field of the '212 Patent, the correction is not subject to

4 | reasonable debate based on consideration of the claim language and the specification, and the

5 | prosecution history mandates this interpretation of Claim 18.  For those reasons, Adaptix respectfully

6 | requests that the Court grant the present motion.  A proposed order was concurrently filed with this

7 | Motion.

8 | **POINTS AND AUTHORITIES**

9 | **I.**     **STATEMENT OF ISSUES**

10 |      Whether the Court should issue an order correcting an obvious typographical error in Claim 18

11 | of the '212 Patent, by replacing the incorrect term, "subscriber units," referenced in column 18, line 4,

12 | of Claim 18, with the correct term, "subcarriers."

13 | **II.**     **INTRODUCTION**

14 |     <u>The Patent</u>

15 |      The '212 Patent describes a method and apparatus for selecting "subcarriers" for use in

16 | wireless communication.  (Foster Decl., Ex. A at col. 2, ll. 19-20.)  Subcarriers are narrow frequency

17 | bands over which wireless devices transmit data, as, for example, between a smartphone handset and

18 | the nearest base station for its cellular network.  The patent refers to the mobile devices (or handsets)

19 | as "subscriber units," or simply "subscribers," reflecting that the users of these handsets have

20 | subscribed the devices to membership in the cellular network.

21 |      In a cellular network of the '212 Patent, the base station allocates subcarriers among the

22 | various subscriber units in a way that facilitates data transmission.  In particular, the '212 Patent

23 | describes in some detail that a subscriber unit gives the base station feedback as to which subcarriers

24 | that subscriber unit is receiving particularly well, and the base station then uses that feedback, together

25 | with other information, to allocate particular subcarriers to that subscriber unit.  The patent further

26 | describes that the subscriber unit, after receiving that allocation of subcarriers, submits updated

27 | feedback to the base station and then receives an updated allocation of subcarriers from the base

28 | station.  '212 Patent col. 6, ll. 63-67.

1

<u>The Claims</u>

2

Claim 1 of the '212 Patent recites a method that includes that last step:

3

the subscriber unit submitting updated feedback information, after being allocated the set of ***subcarriers***, to be allocated an updated set of subcarriers, and thereafter the subscriber unit receiving another indication of the updated set of subcarriers.

4

5

'212 Patent col. 16, ll. 61-65) (emphasis added).

6

Claim 18 of the '212 Patent describes the related apparatus.  But the corresponding section of

7

that Claim recites:

8

wherein the subscriber unit submits updated feedback information after being allocated the set of ***subscriber units*** to receive an updated set of subcarriers and thereafter receives another indication of the updated set of subcarriers.

9

10

'212 Patent col. 18, ll. 2-6 (emphasis added).

11

That "subscriber units" in Claim 18 should read "subcarriers," as in Claim 1, is evident on the

12

face of the patent. As erroneously drafted, Claim 18 recites an apparatus, a part of which is handsets,

13

where the handsets submit updated feedback information after being allocated the set of *handsets* to

14

receive an updated set of subcarriers. As this would seem to nonsensically require the subscriber unit

15

(handset) to be allocated a set of subscriber units (handsets) instead of, as the patent describes,  a set of

16

subcarriers, any person of ordinary skill in the art in the field of the '212 patent would readily

17

recognize the error.

18

<u>The Prosecution History</u>

19

The prosecution history confirms the error – and how to correct it.

20

In the first application that applicants filed, (Application) Claims 7 and 36 <u>both</u> contained this

21

error:

22

23

7. The method defined in Claim 1 further comprising the subscriber submitting new feedback information after being allocated the set of ***subscribers*** to be allocated a new set of subcarriers and thereafter the subscriber receiving another indication of the new set of subcarriers.

24

25

 36. The apparatus defined in Claim 30 wherein the subscriber submits new feedback information after being allocated the set of ***subscribers*** to receive a new set of subcarriers and thereafter receives another indication of the new set of subcarriers.

26

27

(Foster Decl., Ex. B, at 49, 56) (emphasis added.)

28

1    In the ensuing prosecution of that first application, the Patent Office rejected Claims 7 and 36.

2  The applicants then filed a continuation application, together with a preliminary amendment, that

3  included the original uncorrected (Application) Claims 7 and 36.  (Foster Decl., Ex. C at 3, 6.)

4    During the prosecution of the continuation, the Examiner discovered the error, but only in

5  (Application) Claim 7.  (Foster Decl., Ex. D.)  The Examiner ordered, with respect to (Application)

6  Claim 7:

7    Claim 7 is objected to because of the following informalities:
   "the set of subscriber units," in lines 2-3 should be changed into --- the set of sub-carriers ---.
8    Appropriate correction is required.

9  (*Id.* at 2).  The applicants then changed "subscriber units" to "subcarriers" in (Application) Claim 7, as

10  the Examiner had demanded. (Foster Decl., Ex. E at 2.)

11    It seems that the Examiner did not notice that (Application) Claim 36 contained the *identical*

12  *mistake*, as he allowed that claim without mentioning the error or requiring its correction.  It also

13  seems that applicants failed to themselves notice the error, as they overlooked making the same

14  change to (Application) Claim 36 that they had made to (Application) Claim 7.  (*Id.* at 6.)

15    In an Amendment After Final Action, the applicants cancelled (Application) Claims 7 and 36.

16  (Foster Decl., Ex. F at 2, 5.)  In doing so, the applicants moved the limitations of dependent

17  (Application) Claim 7 into independent method (Application) Claim 1 (which would then issue as

18  (Patent) Claim 1) and the limitations of dependent (Application) Claim 36 into independent apparatus

19  (Application) Claim 30 (which would then issue as (Patent) Claim 18 – the claim this motion

20  involves).  (*Id.* at 2, 5, 8-9).  Thus, the obvious mistake of using "subscriber units" instead of

21  "subcarriers" in (Application) Claim 36 was transferred to (Application) Claim 30, which issued as

22  (Patent) Claim 18.

23  **III.    LEGAL STANDARD**

24    In a patent infringement suit, a District Court may correct an obvious error in a patent claim.

25  *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011) (citing *I.T.S.*

26  *Rubber Co. v. Essex Rubber Co.,* 272 U.S. 429, 442 (1926)).  A District Court has authority to correct

27  a patent if: "(1) the correction is not subject to reasonable debate based on consideration of the claim

28  language and the specification and (2) the prosecution history does not suggest a different

1   interpretation of the claims." *Novo Indus., L.P., v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir.

2   2003).

3        The court must make the determination of the presence of an error – and any correction – from

4   the point of view of one skilled in the art. *CBT*, 654 F.3d at 1358; *see Ultimax Cement Mfg. Corp. v.*

5   *CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352-53 (Fed. Cir. 2009).  Corrections to a patent made by a

6   District Court apply retroactively. *See Novo*, 350 F.3d at 1357.

7   **IV.  ARGUMENT**

8       A.  THE REQUESTED CORRECTION ADDRESSES AN OBVIOUS ERROR AND IS
    NOT SUBJECT TO REASONABLE DEBATE BASED ON CONSIDERATION OF

9   THE CLAIM LANGUAGE AND THE SPECIFICATION

10       Federal courts routinely correct patents where errors are evident on the face of the patent.

11  Such corrections may include the addition, deletion, or substitution of terms. *See, e.g.*, *CBT*, 654 F.3d

12  at 1356 (obvious error in phrase "detect analyze" could be corrected by court by inserting "and"

13  between "detect" and "analyze"); *Lemelson v. Gen. Mills, Inc.,* 968 F.2d 1202, 1203 n.3 (Fed. Cir.

14  1992) (permitting correction of patent by inserting "toy" in claim where patent on its face was clearly

15  directed at a "toy trackway" rather than an actual "trackway"); *Howmedica Osteonics Corp. v. DePuy*

16  *Orthopaedics, Inc.*, No. 11-cv-6498, 2013 WL 3455727, at *27-29 (D.N.J. July 9, 2013) (correcting

17  error in claim phrase "inner surface" to mean "outer surface" and term "bearing" to mean "shell,"

18  where errors were draftsman's mistake and "the correction here is not subject to reasonable debate

19  based on the intrinsic evidence"); *Metso Minerals Indus., Inc. v. Johnson Crushers Int'l, Inc.*, 866 F.

20  Supp. 2d 1024, 1030-34 (E.D. Wis. 2011) (correcting typographical error for claim phrase "and

21  thereby closer or farther away from said bowl" to read "from said *cone*"); *see also Pulse Eng'g, Inc. v.*

22  *Mascon, Inc.*, No. 08-cv-595, 2009 WL 755321, at *9-10 (S.D. Cal. Mar. 9, 2009) (correcting "output

23  terminal" to "input terminal," in part because patentee made the same correction in a continuation-in-

24  part of the asserted patent).

25       *Lam Research Corp. v. Schunk Semiconductor* ("*Lam*") held it appropriate to substitute

26  "support ring" for "electrode plate" in a claim limitation reciting "wherein the material of the

27  *electrode plate* has a higher coefficient of thermal expansion than that of the electrode plate."  No. C-

28  03-1335 EMC, 2014 WL 1364980, at *3 (N.D. Cal. Apr. 7, 2014).  *Lam* held that "electrode plate"

was an obvious typographical error that could have been corrected by the court:

> The typographical nature of the correction is not subject to reasonable debate. This is evident from the claim language itself. The statement in Claim 33 that "the *electrode plate* has a higher coefficient of thermal expansion than that of the electrode plate" does not make sense as stated. … Claim 33 only makes sense if *electrode plate* reads *support ring.* Claim 33 begins by talking about an electrode assembly with two components, a support ring and an electrode plate, then bonding the support ring and electrode plate, and utilizing a difference in coefficients of thermal expansion of *something* and the electrode plate. Although this *something* is stated as *electrode plate,* it obviously should be *support ring,* since there is only one electrode plate under discussion and the Claim has hitherto talked about the assembly's two components, the support ring and electrode plate.

*Id.* Much as "electrode plate" obviously should have read "support ring" in *Lam,* "subscriber units" in Claim 18 of the '212 Patent obviously should have instead read "subcarriers."

Claim 18 currently recites an apparatus in which the subscriber units submit updated feedback information after being allocated the set of *subscriber units* to receive an updated set of subcarriers. The inclusion of "subscriber units" is clearly error, as the claim would seem to nonsensically require the subscriber unit to be allocated a set of subscriber units, instead of subcarriers, as the patent describes. A person of ordinary skill in the art in the field of the '212 Patent would recognize that the applicants meant to refer to "a set of subcarriers" in that claim. As a plain reading of Claim 18 reveals that "subscriber units" referenced in column 18, line 4, should instead read "subcarriers," this mistake is an "obvious error," "apparent from the face of the patent." *Novo,* 350 F.3d at 1355, 1357.

The suggested error here is thus evident on the face of the '212 Patent and the appropriate correction -- from "subscriber units" to "subcarriers" -- is not subject to reasonable debate.

### B. THE PROSECUTION HISTORY CONFIRMS THIS INTERPRETATION OF THE CLAIMS

The prosecution history of the '212 Patent not only fails to suggest a different interpretation of Claim 18 than that which Adaptix advances, but actually provides intrinsic evidence that "subscriber units" in column 18, line 4, of Claim 18 should properly read "subcarriers."

As described above, (Application) Claims 7 and 36 were dependent claims related, respectively, to a method and an apparatus to carry out the functions of that method. Both application claims initially erroneously contained "subscribers," instead of "subcarriers." (*See* Foster Decl., Ex. B at 49, 56.) The Examiner caught this mistake in (Application) Claim 7 and required the applicants to

1  correct it by changing "subscriber units" to "subcarriers."  (Foster Decl., Ex. D at 2.) However, the

2  Examiner overlooked the *same mistake* in the corresponding (Application) Claim 36.  As a result,

3  (Patent) Claims 1 and 18 contain contradictory language, despite the functional terms in Claim 18

4  describing the capability of the apparatus to carry out the functions of the method that Claim 1

5  describes.

6  The prosecution history of the '212 Patent thus establishes that the appropriate correction is not

7  subject to reasonable debate.  *See*, *e.g.*, *Howmedica Osteonics Corp.*, 2013 WL 3455727, at *28

8  (correcting error in claim phrase "inner surface" to mean "outer surface" where "the prosecution

9  history supports [movant]'s position that the locking member was intended to be on the outer surface

10  of the bearing. … Accordingly, to correct this error to "outer" rather than "inner" as intended by the

11  inventor would not amount to redrafting the claim).

12  Given that the Examiner found the identical language to be an error in (Application) Claim 7

13  (which issued as part of independent (Patent) Claim 1), there can be no reasonable debate on

14  amending (Patent) Claim 18, as requested here.

15  **V.    CONCLUSION**

16  For the reasons set forth above, Adaptix respectfully requests that the Court grant Adaptix's

17  motion to correct the obvious typographical error in Claim 18 of the '212 Patent.

18

19  Dated:  July 18, 2014          Respectfully submitted,

20  **ADAPTIX, INC.**

21  By: */s/ Kevin Gannon*
    Paul J. Hayes (*pro hac vice*)

22  Kevin Gannon (*pro hac vice*)
    Steven E. Lipman (*pro hac vice*)

23  **HAYES MESSINA GILMAN & HAYES, LLC**
    200 State St., 6th Floor

24  Boston, MA 02109

25  Tel:  (617) 439-4200
    Fax: (617) 443-1999

26  phayes@hayesmessina.com
    kgannon@hayesmessina.com

27  slipman@hayesmessina.com

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Christopher D. Banys
Richard C Lin
Jennifer Lu Gilbert
BANYS, P.C.
1032 Elwell Court, Suite 100
Palo Alto, CA 04303
Tel:  (650) 308-8505
Fax: (650) 353-2202
cdb@banyspc.com
rcl@banyspc.com
jlg@banyspc.com

ATTORNEYS FOR ADAPTIX, INC.