UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, INC.,<br><br>      Plaintiff,<br> v.<br>APPLE, INC., *et al*.,<br><br>      Defendants. | Case No. 5:13-cv-01776-PSG<br><br>**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 247)** |
| ADAPTIX, INC.,<br><br>      Plaintiff,<br> v.<br>APPLE, INC., *et al*.,<br><br>      Defendants. | Case No. 5:13-cv-01777-PSG<br><br>**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 270)** |
| ADAPTIX, INC.,<br><br>      Plaintiff,<br> v.<br>AT&T MOBILITY LLC, *et al*.,<br><br>      Defendants. | Case No. 5:13-cv-01778-PSG<br><br>**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 247)** |

1
Case Nos.: 13-01776; -01777; -01778; -01844; -02023
**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| ADAPTIX, INC.,<br><br>                    Plaintiff,<br>           v.<br><br>CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, *et al.*,<br><br>                    Defendants. | Case No. 5:13-cv-01844-PSG<br><br>**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 240)** |
| ADAPTIX, INC.,<br><br>                    Plaintiff,<br>           v.<br><br>APPLE, INC., *et al.*,<br><br>                    Defendants. | Case No. 5:13-cv-02023-PSG<br><br>**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 249)** |

During prosecution of United States Patent No. 7,454,212, the patent examiner corrected the phrase "subscribers" to "subcarriers" in claim 7 to avoid the absurdity of a cellular system where "subscriber units" are "allocated" to themselves.  Recognizing a similar, but uncorrected, problem in another claim, Plaintiff Adaptix, Inc. now asks this court to complete the task.  Because there is no reasonable debate that on its face the '212 patent contains additional error, and because the patent's prosecution history supports Adaptix's proposed correction, the court GRANTS Adaptix's motion and DENIES Defendants' cross-motion for summary judgment of invalidity for indefiniteness.

**I.**

"Many years before the enactment of 35 U.S.C. §§ 255 and 254, which provide for corrections of mistakes by the patentee (section 255) and the PTO (section 254), the Supreme Court held that, in a patent infringement suit, the courts could properly interpret a patent to correct an obvious error."[1]  Even after the enactment of sections 255 and 254, correction by the court is

---
[1] *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003) (citing *I.T.S. Rubber Co. v. Essex Rubber Co.,* 272 U.S. 429, 444 (1926)).

2
Case Nos.: 13-01776; -01777; -01778; -01844; -02023
**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**

permitted, but "only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims."[2] Stated differently, "[t]he error must be evident on the face of the patent, but the prosecution history should be consulted to ascertain whether there is only a single reasonable construction."[3] The district court's correction of a patent claim may precede or follow claim construction.[4]

"[A] district court must consider any proposed correction from the point of view of one skilled in the art."[5] The proposed correction must "be consistent with the invention described in the specification and drawings of the original patent."[6] "A court therefore must consider how a potential correction would impact the scope of a claim and if the inventor is entitled to the resulting claim scope based on the written description of the patent."[7]

The '212 patent describes a method and apparatus for selecting "subcarriers" for use in wireless communication.[8] Subcarriers are narrow frequency bands over which wireless devices transmit data, as, for example, between a smartphone handset and the nearest base station for its cellular network.[9] The patent refers to wireless handsets as "subscriber units" or simply

---

[2] *Id.*

[3] *Fargo Electronics, Inc. v. Iris, Ltd., Inc.*, 287 F. App'x 96, 102 (Fed. Cir. 2008) (citing *Group One, Ltd. v. Hallmark Cards, Inc.,* 407 F.3d 1297, 1303 (Fed.Cir.2005)).

[4] *See CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1359 (Fed. Cir. 2011).

[5] *Id.* at 1358 (citing *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1353 (Fed. Cir. 2009) (internal quotations omitted)).

[6] *Id.* (citing *Essex*, 272 U.S. at 444 (internal quotations omitted)).

[7] *Id.* at 1360 (explaining that neither the district court nor a person of ordinary skill in the art was required to guess which meaning was intended in order to make sense of the patent claim because each of the three proposed reasonable interpretations would result in the same claim scope); *see also Essex*, 272 U.S. at 443 ("This is not in any real sense, a re-making of the claim; but is merely giving to it the meaning which was intended by the applicant and understood by the examiner.").

[8] *See* U.S. Patent No. 7,454,212 col. 1, ll. 16-19; col. 2, ll. 19-20 (filed Aug. 8, 2005).

[9] Defendants do not dispute the underlying facts of the '212 patent claims or prosecution history. These facts are therefore taken as true from Adaptix's motion. *See* Case No. 13-1776: Docket No. 247.

3
Case Nos.: 13-01776; -01777; -01778; -01844; -02023
**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**

"subscribers," reflecting that the users of these handsets have subscribed the devices to membership in the cellular network.

In a cellular network of the '212 patent, the base station allocates subcarriers among the various subscriber units in a way that facilitates data transmission. In particular, the '212 patent describes that a subscriber unit gives the base station feedback as to which subcarriers that subscriber unit is receiving particularly well, and the base station then uses that feedback—together with other information—to allocate particular subcarriers to that subscriber unit. The patent further describes that the subscriber unit—after receiving that allocation of subcarriers—submits updated feedback to the base station and then receives an updated allocation of subcarriers from the base station.

Claim 1 of the '212 patent recites the method that includes that last step:

> the subscriber unit submitting updated feedback information, after being allocated the set of *subcarriers*, to be allocated an updated set of subcarriers, and thereafter the subscriber unit receiving another indication of the updated set of subcarriers.[10]

Claim 18 recites an apparatus corresponding to the method recited in Claim 1:

> wherein the subscriber unit submits updated feedback information after being allocated the set of *subscriber units* to receive an updated set of subcarriers and thereafter receives another indication of the updated set of subcarriers.[11]

As drafted, claim 18 thus recites an apparatus wherein the subscriber unit submits updated feedback after being allocated a set of subscriber units—an assertion that is absurd.

In the first application for the patent, Claims 7 and 36 contained similar language:

> 7. The method defined in Claim 1 further comprising the subscriber submitting new feedback information after being allocated the set of *subscribers* to be allocated a new set of subcarriers and thereafter the subscriber receiving another indication of the new set of subcarriers.
>
> 36. The apparatus defined in Claim 30 wherein the subscriber submits new feedback information after being allocated the set of *subscribers* to receive a new set of subcarriers and thereafter receives another indication of the new set of subcarriers.[12]

---

[10] '212 Patent col. 18, ll. 61-65 (emphasis added).

[11] '212 Patent col. 18, ll. 2-6 (emphasis added).

[12] *See* Case No. 13-1776: Docket No. 247-3 at 49, 56 (emphasis added).

4
Case Nos.: 13-01776; -01777; -01778; -01844; -02023
**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**

1   During prosecution of the continuation, the examiner discovered the error, but only in Claim 7.[13]

2   The applicants then changed "subscriber units" to "subcarriers" in that claim.[14]  Neither the

3   examiner nor the applicants sought to correct the similar language in Claim 36 before issuance of

4   the patent.[15]  In an amendment after final action, the applicants cancelled Claims 7 and 36 and

5   moved the limitations of those claims into Claims 1 and 18, respectively.[16]

6   Following issuance, the '212 patent was ultimately assigned to Adaptix, which has sued a

7   variety of parties for infringement in this district and elsewhere.  As it pursues its various cases,

8   Adaptix seeks judicial correction of what is now Claim 18 in a manner consistent with the

9   correction by the examiner of what was previously Claim 7.

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

**III.**

At issue is whether the reference to "subscriber units" in claim 18 is an obvious error within the court's authority to correct.  The court concludes that the reference was indeed such an error and that correction by the court is warranted.

***First***, the error is evident on the face of the patent.[17]  Claim 18 states that after being allocated a set of "subscriber units," the subscriber unit submits updated feedback information in order to receive an updated set of "subcarriers."  Neither party disputes that the term "subscriber units" as used in claim 18 is nonsensical because the '212 patent concerns only the allocation of

---

[13] *See* Case No. 13-1776: Docket No. 247-5 at 4.

[14] *See* Case No. 13-1776: Docket No. 247-6 at 2.

[15] *See id.* at 6.

[16] *See* Case No. 13-1776: Docket No. 247-7 at 2, 5, 8-9.

[17] *See Fargo Electronics*, 287 F. App'x at 102.

subcarriers, not subscriber units.[18] In fact, the only allocation in the claim that precedes the submission of updated feedback information is an allocation of subcarriers.[19] Nor does the remainder of the specification or the drawings suggest that the invention would allocate subscriber units to themselves—as the claim language requires. It is therefore clear without looking beyond the face of the patent that the error in claim 18 would be obvious to a person of ordinary skill in the art.[20]

*Second*, based on consideration of the claim language and the specification, the proposed correction is not subject to reasonable debate.[21] The language in claim 18 confirms that "subcarriers" is the only reasonable replacement for "subscriber units" because the subscriber unit cannot receive an "updated" set of subcarriers unless there was an earlier allocation of subcarriers. A person of ordinary skill in the art would recognize that subscriber units are not allocated to subscriber units and that the claim only makes sense if "subscriber units" refers to subcarriers.

While Defendants urge that a person of ordinary skill could reasonably interpret "subscriber units" to mean something other than "subcarriers," that proposition is unavailing. To be sure, the specification discloses a variety of types of allocations that can be made to the subscriber unit including, one or more "clusters," "group based clusters," "at least one cluster in the one or more groups of clusters selected by the subscriber," "basic and auxiliary clusters," "downlink and uplink clusters," "coherence clusters," "diversity clusters" and "a set of candidate subcarriers, along with the assigned coding and modulation rates for those subcarriers."[22] But these alternatives do not

---

[18] *See* Case No. 13-1776: Docket No. 247 at 6; Docket No. 262 at 9.

[19] See '212 Patent col. 18, ll. 2-6.

[20] *See, e.g.*, *Essex*, 272 U.S. at 442 (explaining that the omission of the word "rear" would render the claim invalid as being for a different invention than that described in the specification and drawings of the original patent and thus, the claim should be construed and have the same effect as if it had been included); *cf. H–W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1334 (Fed. Cir. 2014) (explaining that the court could not correct an error that was apparent only by referencing the prosecution history).

[21] *See Novo*, 350 F.3d at 1357.

[22] *See* Case No. 13-1776: Docket No. 262 at 5-6.

Case Nos.: 13-01776; -01777; -01778; -01844; -02023
**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**

1    demonstrate that the proposed correction is subject to reasonable debate.  The first alternative,

2    "clusters," clearly refers to "clusters of subcarriers" in the context of the claim language and thus

3    has the same scope and meaning as "subcarriers."[23]  Each of the remaining alternatives merely

4    describes a narrower class of subcarriers.  For example, "group based clusters" describes an

5    embodiment where the clusters of subcarriers are partitioned into groups in order to reduce

6    bandwidth requirements and inter-cell interference.[24]  Defendants do not provide—and the court

7    has not identified—any reason to believe a person of ordinary skill would understand the claim to

8    be limited to one of these narrower classes of subcarriers.

9    ***Third***, a construction of the claim that differs from the proposed correction is not suggested

10    by the prosecution history.[25]  Rather than suggesting a different construction, the prosecution

11    history reinforces the conclusion that "subcarriers" is the only reasonable construction of claim

12    18's reference to "subscriber units."  In the original patent application, both claim 7 (describing the

13    method for subcarrier selection) and claim 36 (describing an embodiment of the method in claim 7)

14    mistakenly stated that the subscriber submits new feedback information after being allocated the

15    set of subscribers.[26]  During prosecution, the examiner identified the mistake in claim 7 but both

16    the applicants and the examiner failed to spot the identical error in claim 36.[27]  Nothing in the

17    prosecution history suggests a correction was intended in one claim but not the other.

18    Defendants do not contend that the prosecution history suggests a different interpretation

19    than the proposed correction.  Instead, they argue that the prosecution history suggests that there

20    was no error in claim 18 and that the appropriate cure is not correction, but invalidation.  In their

21    view, the failure of the examiner and the applicants to notice the problem suggests that neither the

22    applicants nor the examiner believed there to be a mistake. So, the patent must have been issued

---

[23] *See* '212 Patent col. 17, ll. 51-55.

[24] *See* '212 Patent col. 11, l. 49 *et seq.*; figs. 6, 7.

[25] *See Novo*, 350 F.3d at 1357.

[26] *See* Case No. 13-1776: Docket No. 247-3 at 49, 56.

[27] *See* Case No. 13-1776: Docket No. 247-5 at 4.

7
Case Nos.: 13-01776; -01777; -01778; -01844; -02023
**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**

exactly as intended, and the claim should be held to violate the definitiveness requirement of 35 U.S.C. § 112(e).[28]  Defendants similarly argue that the applicants' correction of the language in claim 7 but not in claim 36 is at least as likely to be the result of a conscious decision as it is the result of mere oversight.[29]  But Defendants' arguments ultimately have no bearing on the propriety of the proposed correction.  Instead, they only support Defendants' incorrect contention that the error is not obvious on the face of the patent.  As explained above, reading nothing more than the other language in claim 18, one of ordinary skill in the art would understand the error and thus the scope of the claim with "reasonable certainty."[30]

Defendants finally complain about Adaptix's delay in bringing this error in claim 18 to the court's attention, citing the Federal Circuit's opinion in *Southwest Software, Inc. v. Harlequin, Inc.*[31]  *Southwest Software*, however, was about correction by the patent office under section 254, not correction by the courts under the authority recognized in *Essex* and affirmed in *Novo*.  More fundamentally, whereas neither the error nor the correction in *Southwest Software* was obvious to one of skill in the art reading it or in view of the prosecution history, both the error and the correction here were obvious on the face of the patent.[32]  While Adaptix could have and perhaps should have acted more promptly, Defendants cite no case limiting judicial correction under the present circumstances.

**IV.**

Adaptix's proposed correction to what is an obvious error is not subject to reasonable debate, and the prosecution history supports this conclusion.[33]  Replacing the term "subscriber

---

[28] *See* Docket No. 262 at 7.

[29] *See id*. at 8.

[30] *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2124 (2014).

[31] 226 F.3d 1280, 1296 (Fed. Cir. 2000).

[32] *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1373 (Fed. Cir. 2001) (distinguishing *Southwest Software*).

[33] *Cf. Howmedica Osteonics Corp. v. DePuy Orthopaedics, Inc.*, Case No. 11-6498, 2013 WL 3455727, at *28-29 (D.N.J. July 9, 2013) (correcting "inner" to read "outer" where "[t]hroughout the claim language and patent specification, the '097 Patent identifies the locking member being

units" with "subcarriers" in Claim 18 does no more than assure the patentees protection for the exact scope of the claim originally intended.[34]

**SO ORDERED.**

Dated: October 27, 2014

                                            _____
                                            PAUL S. GREWAL
                                            United States Magistrate Judge

---

located on the outer part of the bearing" and correcting "bearing" to read "shell" where the "'097 Patent consistently describes the recesses on the 'upper shell rim' and not the 'upper bearing rim'"); *Metso Minerals Industries, Inc. v. Johnson Crushers Int'l*, 866 F. Supp.2d 1024, 1033 (E.D. Wis. 2011) (correcting "said bowl" to read "said cone" where "the rest of the claim and specification make clear that the bowl is to move relative to the cone"); *Pulse Engineering, Inc. v. Mascon, Inc.*, Case No. 08-0595, 2009 WL 755321, at *9-10 (S.D. Cal. Mar. 9, 2009) (correcting "output" to read "input" and "first" to read "third" where these were the only possible replacement terms evident from the face of the patent); *Lam Research Corp. v. Schunk Semiconductor*, Case No. 03-1335, 2014 WL 1364980, at *3-4 (N.D. Cal. Apr. 7, 2014) (finding the "typographical nature of the correction" from "electrode plate" to "support ring" to be evident from "the context provided by the rest of the claim language and specification").

[34] *See Novo*, 350 F.3d at 1357.

9
Case Nos.: 13-01776; -01777; -01778; -01844; -02023
**ORDER GRANTING MOTION TO CORRECT ASSERTED PATENT AND DENYING CROSS-MOTION FOR SUMMARY JUDGMENT**