United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, INC.,<br><br>            Plaintiff,<br>       v.<br>APPLE, INC., *et al.*,<br><br>            Defendants. | Case No. 5:13-cv-01776-PSG<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>**(Re: Docket No. 311, 312)** |
| ADAPTIX, INC.,<br><br>            Plaintiff,<br>       v.<br>APPLE, INC., *et al.*,<br><br>            Defendants. | Case No. 5:13-cv-01777-PSG<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>**(Re: Docket No. 339, 336)** |
| ADAPTIX, INC.,<br><br>            Plaintiff,<br>       v.<br>AT&T MOBILITY LLC, *et al.*,<br><br>            Defendants. | Case No. 5:13-cv-01778-PSG<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>**(Re: Docket No. 303, 305)** |

1
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

| | |
|---|---|
| ADAPTIX, INC.,<br><br>         Plaintiff,<br>   v.<br><br>CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, *et al.*,<br><br>         Defendants. | Case No. 5:13-cv-01844-PSG<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>**(Re: Docket No. 288, 289)** |
| ADAPTIX, INC.,<br><br>         Plaintiff,<br>   v.<br><br>APPLE, INC., *et al.*,<br><br>         Defendants. | Case No. 5:13-cv-02023-PSG<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>**(Re: Docket No. 310, 312, 315)** |

A short while ago, Defendants Apple, Inc., Verizon Wireless, AT&T Mobility LLC and HTC Corporation filed motions for summary judgment of no direct infringement of the asserted method claims.[1] Citing the Federal Circuit's decision in *Ricoh Co., Ltd. v. Quanta Computer Inc.*,[2] Defendants argued that they could not have directly infringed because it is undisputed that they merely sold preprogrammed accused handsets and did not perform any of the required steps. Adaptix countered with the decision by the Federal Circuit in *SiRF Technology, Inc. v ITC*,[3] in which the court found direct infringement based on the sale of accused devices preprogrammed to automatically perform certain steps at issue. As the undersigned struggled to reconcile these holdings following a spirited oral argument, into his lap fell a new Federal Circuit decision issued

---

[1] Although Defendants have filed individual motions for summary judgment of non-infringement, their arguments are substantially aligned. The court therefore will consider the motions together and rule accordingly.

[2] 550 F.3d 1325 (Fed. Cir. 2008); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993).

[3] 601 F.3d 1319 (Fed. Cir. 2010).

on December 4, 2014—*Ericsson, Inc. v. D-Link Systems, Inc.*[4]—that reconciled these seemingly contradictory holdings for him. Under *Ericsson,* even if they supply handsets preprogrammed to perform multiple claimed steps, Defendants must still perform at least one step of a claimed method themselves to be held liable for direct infringement. Because there is no genuine dispute that Defendants perform no such step, Defendants' motions must be GRANTED.

## I.

Pursuant to Fed. R. Civ. P. 56(a), the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] At the summary judgment stage, the court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[6] Material facts are those that may affect the outcome of the case.[7] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[8]

A patented method cannot be directly infringed merely by the sale of a product.[9] Instead, a plaintiff must present specific evidence that the alleged infringer performed or controlled all the steps of a method claim.[10] Alternatively, a plaintiff may establish that while the accused infringer performed or controlled some—but not all—such steps, any step not performed or controlled was automatically performed by an accused product according to its programming.[11]

---

[4] *See* Case Nos. 2013-cv-01625, 2013-cv-01631, 2013-cv-01632, 2013-cv-01633, 2014 WL 6804861, at *15 (Fed. Cir. Dec. 4, 2014).

[5] Fed. R. Civ. P. 56(a).

[6] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[7] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[8] *See id.*

[9] *See Joy Techs.*, 6 F.3d at 774-75.

[10] *See Ricoh*, 550 F.3d at 1336.

[11] *See id.* at 1329-30.

United States District Court
For the Northern District of California

  Adaptix alleges that Defendants directly infringe method claims 1, 8, 9, 12 and 15 of the '212 patent and method claims 8 and 9 of the '748 patent. The patents describe, among other things, "select[ing] a set of candidate subcarriers" for use in wireless communication. Subcarriers are narrow frequency bands over which wireless devices transmit data, as, for example, between a smartphone handset and the nearest base station for its cellular network. The patents refer to wireless handsets as "subscriber units" or simply "subscribers," reflecting that the users of these handsets have subscribed the devices to membership in the cellular network.

  In a cellular network of the asserted patents, the base station allocates subcarriers among the various subscriber units in a way that facilitates data transmission. In particular, they describe a subscriber unit that gives the base station feedback as to which subcarriers that subscriber unit is receiving particularly well, and the base station then uses that feedback—together with other information—to allocate particular subcarriers to that subscriber unit. The patents further describe that the subscriber unit—after receiving that allocation of subcarriers—submits updated feedback to the base station and then receives an updated allocation of subcarriers from the base station.

  Claim 1 of the '212 patent and Claim 8 of the '748 patent—the two independent claims at issue—recite:

> 1. A method for subcarrier selection for a sytem employing orthogonal frequency division multiple access (OFDMA) comprising:
>   a subscriber unit measuring channel and interference information for a plurality of subcarriers based on pilot symbols received from a base station;
>   the subscriber unit selecting a set of candidate subcarriers; the subscriber unit providing feedback information on the set of candidate subcarriers to the base station;
>   the subscriber unit receiving an indication of subcarriers fo the set of subcarriers selected by the base station for use by the subscriber unit; and
>   the subscriber unit submitting updated feedback information, after being allocated the set of subcarriers to be allocated an updated set of subcarriers, and thereafter the subscriber unit receiving another indiciation of the updated set of subcarriers.[12]
>
> 8. A method for subcarrier selection for a system employing orthogonal frequency division multiple access (OFDMA) comprising:

---

[12] Case No. 13-01776: Docket No. 1 at Exh. A.

        a subscriber measuring channel and interference information for a plurality of subcarriers based on pilot symbols received from a base station;
        the subscriber selecting a set of candidate subcarriers;
        the subscriber providing feedback information on the set of candidate subcarriers to the base station;
        the subscriber sending an indication of coding and modulation rates that the subscriber desires to employ for each cluster; and
        the subscriber receiving an indication of subcarriers of the set of subcarriers selected by the base station for use by the subscriber.[13]

Each of the steps of these methods plainly require action by the subscriber unit when in use.[14]

Rather than charging that Defendants themselves directly infringe by performing each step of any claimed method, Adaptix looks to *SiRF* and focuses on Defendants' sale of handsets programmed to perform what the 3GPP standard refers to as "CQI Reporting Mode 3." To be clear, Mode 3 reporting is a protocol that Defendants do not program themselves.[15] Defendants instead rely upon processor chips that are programmed with the protocol by the chip suppliers and cannot be re-programmed.[16] No matter who does the programming, Defendants argue, because they do not perform any steps of any asserted method, they cannot be found to directly infringe any such method. Based on *Ricoh,* Defendants seek summary judgment that they did not directly infringe any asserted method claim.

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

The fundamental question underlying Defendants' motions is whether one can directly infringe a claimed method without performing even one step of the method based on the sale of a

---

[13] Case No. 13-01776: Docket No. 1 at Exh. B.

[14] *See* Case No. 13-01777: Docket No. 334-4 at 5.

[15] *See* Case No. 13-01778: Docket No. 305-4 at 3, 4.

[16] *See* Case No. 13-01778: Docket No. 305-4 at 7.

device preprogrammed to perform one or more such steps. Because the Federal Circuit has now answered that question in the negative, the motions must be granted.

*First*, there is no genuine dispute that no individual acting on behalf of Defendants used an accused handset to perform any claimed method. None of the evidence cited by Adaptix shows any individual acting on behalf of Defendants using an accused handset to perform any claimed method. Adaptix does not really even argue as much, and Adaptix's infringement expert Michael Caloyannides makes no statement to the contrary.[17] While there is evidence that handsets operated by end users have been used to send Mode 3 reports to base stations, because nothing suggests any Defendant is sending those reports, that evidence alone is insufficient to establish direct infringement by Defendants. Nor is it sufficient that any Defendant may have initiated the sending of those reports.[18] Adaptix must present evidence that the accused handsets were used to perform at least one step of a claimed method by an individual acting for Defendants, or by an individual "controlled" by Defendants.[19] Adaptix has done neither.

---

[17] *See* Case No. 13-01778: Docket No. 305-4 at 5; Case No. 13-01776: Docket No. 312-3 at 7; Case No. 13-01776: Docket No. 310-5 at 5; Case No. 13-01777: Docket No. 334-4 at 6.

[18] Adaptix argues that Verizon "controls" the performance by the accused handsets by sending a Mode 3 request to the handsets, which have been programmed to automatically generate a Mode 3 report upon receipt. Dkt. 340-4 at 6. Not only does Adaptix fail to cite to any case law finding control based on such limited facts, but similar theories have been rejected by other courts. For example, in *Ultratec*, the district court rejected the proposition that "mere initiation of a service that is programmed to automatically perform certain steps of the claimed methods is sufficient to establish the direction and control contemplated by the Federal Circuit." *See Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, Case No. 13-cv-00346, 2014 U.S. Dist. LEXIS 139776, at *7 (W.D. Wis. Oct. 1, 2014). *See also Deep9 Corporation v. Barnes & Noble, Inc.,* Case No. 11-cv-00035, 2012 U.S. Dist. LEXIS 135512, at *38 (W.D. Wash. Sept. 21, 2012) (rejecting an argument that Barnes & Noble "controlled" an end user's Nook device to perform the recited "downloading" and "updating" steps when the Nook was connected to Barnes & Noble's servers because the plaintiff "failed to allege legally sufficient facts to show direction or control by Barnes & Noble over a user's choice to connect his or her Nook device to the Internet"); *Global Patent Holdings, LLC v. Panthers BRHC LLC,* 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) (rejecting an argument that the defendant service provider "controlled" a remote user's computer by sending a Javascript program to the remote user's computer to allow the claimed process to begin because there was no evidence that the remote users were contractually bound to visit the defendant's website).

[19] *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008). In *Muniauction*, the Federal Circuit set forth the test for determining whether a defendant "controls" a third party in a manner sufficient to make that defendant liable for direct infringement based on actions of the third party. It held that a "claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Muniauction*, 532 F.3d at 1329. The Federal Circuit also explained that "the control

*Second*, in light of *Ericsson,* Adaptix's *SiRF*-based theory of direct infringement does not hold water.  In *SiRF*, the defendant was an "end-to-end" provider of GPS services.[20]  SiRF designed, manufactured and sold chips that were incorporated into end-user GPS devices and also provided GPS-related data from its servers to those end-user devices.[21]  Every step in the asserted method claims was performed by SiRF using servers in its physical possession and control, except for the final step of each claim, which was performed remotely using SiRF's GPS chip and software in the end-user device.[22]  On these facts, the Federal Circuit held that SiRF was liable for direct infringement of the asserted method claims.[23]  In rejecting SiRF's argument that it did not perform the final step of each method claim, the Federal Circuit focused on the fact that SiRF designed and built the chip in the end-user GPS device to automatically perform the claimed step.[24] The court found that even though the accused infringer controlled some—but not all—of the method steps, any uncontrolled steps were automatically performed by the accused products.[25]

But as *Ericsson* explained,

> [The] decision in *SiRF* did not create direct infringement liability whenever an alleged infringer sells a product that is capable of executing the infringing method. Our decision in *SiRF* is not applicable here because all of the steps of the method in claims 1 and 2 of the '215 patent are performed on the end product, which is controlled by a third party.
> Unlike the method in *SiRF*, there are no steps automatically performed by equipment controlled by D-Link.  In fact, none of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method, and we decline to do so here.  Because Ericsson cannot point to any

---

or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of the claimed method." *Id*. at 1330 (citing *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007)).

[20] *Id.* at 1330.

[21] *Id.* at 1323-24.

[22] *Id*. at 1323-24, 1329-30.

[23] *Id.* at 1330-31.

[24] *See SiRF*, 601 F.3d at 1331.

[25] *See id.* at 1329-30.

evidence in the record that D-Link performed the infringing steps, or that any of its customers were under its direction or control, the jury did not have substantial evidence to find direct infringement of claims 1 and 2 of the '215 patent.[26]

Essentially then, what is relevant is not whether any Defendant supplied a handset that can perform each step of a claimed method. What is relevant is whether any such Defendant supplying a handset programmed to perform at least one step may be said to have performed or controlled any others.[27] If so, as in *SiRF*, there is direct infringement. But if not, there is no direct infringement, as in *Ricoh*. Because Adaptix presents no evidence that Defendants perform or control any claim step, despite their supply of handsets programmed to perform at least some of the other steps claimed, this is plainly a *Ricoh*-type—and not a *SiRF*-type—case. No reasonable jury could find otherwise.

## IV.

Defendants' motions for summary judgment of non-infringement are GRANTED.

**SO ORDERED.**

Dated: January 20, 2015

*[signature]*
PAUL S. GREWAL
United States Magistrate Judge

---

[26] *See Ericsson, Inc. v. D-Link Systems, Inc.*, Case Nos. 2013-cv-01625, 2013-cv-01631, 2013-cv-01632, 2013-cv-01633, 2014 WL 6804861, at *15 (Fed. Cir. Dec. 4, 2014) (citing *SiRF*, 601 F.3d at 1331).

[27] *See id.*