UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, INC.,<br><br>               Plaintiff,<br>     v.<br>APPLE, INC., *et al*.,<br><br>               Defendants. | Case No. 5:13-cv-01776-PSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>**(Re: Docket No. 309)** |
| ADAPTIX, INC.,<br><br>               Plaintiff,<br>     v.<br>APPLE, INC., *et al*.,<br><br>               Defendants. | Case No. 5:13-cv-01777-PSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>**(Re: Docket No. 335)** |
| ADAPTIX, INC.,<br><br>               Plaintiff,<br>     v.<br>AT&T MOBILITY LLC, *et al*.,<br><br>               Defendants. | Case No. 5:13-cv-01778-PSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>**(Re: Docket No. 304)** |

1
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY

| | |
|---|---|
| ADAPTIX, INC., <br><br> Plaintiff, <br> v. <br> CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, *et al.*, <br><br> Defendants. | Case No. 5:13-cv-01844-PSG <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** <br><br> **(Re: Docket No. 286)** |
| ADAPTIX, INC., <br><br> Plaintiff, <br> v. <br> APPLE, INC., *et al.*, <br><br> Defendants. | Case No. 5:13-cv-02023-PSG <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** <br><br> **(Re: Docket No. 311)** |

Defendants Apple Inc., AT&T Mobility LLC, Verizon Wireless and HTC Corporation move for summary judgment of invalidity on the basis that the term "each cluster"—as it appears in claims 8 and 9 of Plaintiff Adaptix's '748 patent and claims 9 and 10 of its '212 patent—is indefinite. Because the "each cluster" term "might mean several different things and no informed and confident choice is available among the contending definitions,"[1] Defendants' motion is GRANTED.

**I.**

Pursuant to Fed. R. Civ. P. 56(a), the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] At the summary judgment stage, the court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue

---

[1] *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2130 & n.8).

[2] Fed. R. Civ. P. 56(a).

2
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

for trial."[3] Material facts are those that may affect the outcome of the case.[4] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[5]

Title 35 U.S.C. § 112(b) requires that the claims of a patent "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."[6] "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."[7] The definiteness standard requires "clear notice of what is claimed, thereby appris[ing] the public of what is still open to them."[8] Therefore, "a patent does not satisfy the definiteness requirement of § 112 merely because 'a court can ascribe *some* meaning to a patent's claims.'"[9] "The claims, when read in light of the specification and prosecution history, must provide objective boundaries for those of skill in the art."[10] Indefiniteness is a matter of law that can be resolved on summary judgment.[11]

In 2005, Adaptix patented a method for wireless devices to report to a base station the quality of the channel over which they communicate. This quality report is instrumental in

---

[3] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[4] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[5] *See id.*

[6] 35 U.S.C. § 112(b).

[7] *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

[8] *Id.* at 2129.

[9] *Interval Licensing LLC v. AOL, Inc.*, Case Nos. 13-cv-01282, -01283, -01284, -01285, 2014 WL 4435871, at *5 (Fed. Cir. Sept. 10, 2014) (quoting *Nautilus*, 134 S. Ct. at 2130).

[10] *Id.*

[11] *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007) ("A determination that a patent claim is invalid for failing to meet the definiteness requirement in 35 U.S.C. § 112, ¶ 2 is a legal question reviewed de novo.").

allowing for the allocation of fast and efficient channels for the transmission of data. The '212 and '748 patents describe a method of channel, or subcarrier, selection for use in wireless networks.[12] A subcarrier is a narrow frequency band, within the larger wideband frequency, through which subscribers transmit data from a wireless device to a base station. The patents refer to a wireless device as a "subscriber unit" or, more simply, a "subscriber."

A base station allocates certain subcarriers to subscribers in order to facilitate data transmission. Subcarriers are used to effectuate transmission from one base station to many subscribers. After a subscriber has been allocated subcarriers, the subscriber is required to provide feedback on the subcarriers in order to assess which are transmitting well. The base station then uses this feedback to reallocate particular subcarriers to the subscribers.

Throughout the '212 and '748 patents, terms such as "plurality of subcarriers" and "set of candidate subcarriers" are used to describe multiple subcarriers.[13] For example, Claim 8 of the '748 patent and claim 9 of the '212 patent both use the term "each cluster" in reference to the subcarriers.[14] The patents define a "cluster" as "a logical unit that contains at least one physical subcarrier."[15] Thus, while one embodiment of the patent, as set forth in Figure 1A, shows a cluster of four subcarriers, a "cluster" may contain only a single subcarrier.

In March 2014, Judge Craven of the Eastern District of Texas narrowly construed the term "each cluster" in another case involving the patents-in-suit and recommended that a motion for summary judgment of indefiniteness of the term be denied.[16] Soon after, Judge Schneider of the same court overruled defendants' objections and adopted Judge Craven's recommendation.[17] But

---

[12] *See* Case No. 13-01776: Docket No. 1 at Exhs. A-B ('748 Patent: Claims 6, 8, 19, 21; '212 Patent: Claims 1, 18).

[13] *See id.*

[14] *See id.*

[15] *See* Case No. 13-01776: Docket No. 309 at 5; *see also* Case No. 13-01776: Docket. No. 144 at 16 ("The patent defines a cluster as 'a logical unit that contains at least one physical subcarrier.'").

[16] *See* Case No. 13-01776: Docket No. 334 at 1.

[17] *See id.*

4
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

later that year, a new subset of defendants filed a similar motion for summary judgment of indefiniteness of the term and, based on the Supreme Court's intervening decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, Judge Craven found the term indefinite and recommended that summary judgment of invalidity be granted.[18] Adaptix subsequently filed objections to the recommendation.[19] Judge Schneider nevertheless adopted Judge Craven's recommendation in November 2014 invalidating claim 8 of the '748 patent and claims 9, 11 and 26 of the '212 patent.[20] Defendants now move for summary judgment of invalidity in this case on the same basis that the term "each cluster" is too uncertain to be reasonably interpreted by one of ordinary skill in the art.[21]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

Defendants argue that claims 8 and 9 of the '748 patent and claims 9 and 10 of the '212 patent are invalid because one of ordinary skill in the art cannot determine which "subcarriers" in the preceding claim steps belong to "each cluster." In particular, Defendants contend that, while the term "cluster" is defined as "a logical unit that contains at least one physical subcarrier" in the asserted patents, this definition does not render definite the term "each cluster" as it appears in the patents. The relevant claims of the patents recite:

The '212 Patent:

1. A method for subcarrier selection for a system employing orthogonal frequency division multiple access (OFDMA) comprising:

---

[18] *See* Case No. 13-01776: Docket No. 309 at 2.

[19] *See* Case No. 13-01776: Docket No. 334 at 2.

[20] *See Adaptix, Inc. v. Huawei Techs. Co., Ltd.*, Case Nos. 6:13-cv-00438, -00439, -00440, -00441, 00443, 00444, 00445, 00446, 2014 U.S. Dist. LEXIS 163713, at *28 (E.D. Tex. Nov. 20, 2014).

[21] *See* Case No. 13-01776: Docket No. 309 at 2.

> [a] a subscriber unit measuring channel and interference information for a <u>plurality of subcarriers</u> based on pilot symbols received from a base station;
> [b] the subscriber unit selecting a <u>set of candidate subcarriers</u>;
> [c] the subscriber unit providing feedback information on the <u>set of candidate subcarriers</u> to the base station;
> [d] the subscriber unit receiving an indication of subcarriers of the <u>set of subcarriers</u> selected by the base station for use by the subscriber unit; and
> [e] the subscriber unit submitting updated feedback information, after being allocated the set of subcarriers to be allocated an updated <u>set of subcarriers</u>, and thereafter the subscriber unit receiving another indication of the updated set of subcarriers.
>
> 8. The method defined in claim 1 further comprising the base station selecting the subcarriers from the <u>set of candidate subcarriers</u> based on additional information available to the base station.
>
> 9. The method defined in claim 8 wherein the additional information comprises traffic load information on ***each cluster*** of subcarriers.
>
> 10. The method defined in claim 9 wherein the traffic load information is provided by a data buffer in the base station.[22]

The '748 Patent

> 8. A method for subcarrier selection for a system employing orthogonal frequency division multiple access (OFDMA) comprising:
> [a] a subscriber measuring channel and interference information for a <u>plurality of subcarriers</u> based on pilot symbols received from a base station;
> [b] the subscriber selecting a <u>set of candidate subcarriers</u>;
> [c] the subscriber providing feedback information on the <u>set of candidate subcarriers</u> to the base station;
> [d] the subscriber sending an indication of coding and modulation rates that the subscriber desires to employ for ***each cluster***; and
> [e] the subscriber receiving an indication of subcarriers of the <u>set of subcarriers</u> selected by the base station for use by the subscriber.
>
> 9. The method defined in claim 8 wherein the indication of coding and modulation rates comprises an SINR index indicative of a coding and modulation rate.[23]

According to Defendants, there are many possible combinations of clusters and subcarriers based on the plain language of the patents, rendering it impossible for one skilled in the art to understand what cluster is actually claimed. For example, in the context of claim 8 of the '748 patent, Defendants question whether the term "each cluster" in element [d] refers to some or all of

---

[22] Case No. 13-01776: Docket No. 1 at Exh. A (emphasis added).

[23] *Id.* at Exh. B (emphasis added).

the "plurality of subcarriers" in element [a] or whether it refers to the "set of subcarriers" in elements [b] and [c].[24]  Adaptix responds that there is no uncertainty in the claims as construed because a "plain reading of the claims and specifications . . . shows that the term "each cluster" finds antecedent basis in, and refers to, the 'set of candidate subcarriers' of elements [b] and [c], and not the 'plurality of subcarriers' of element [a]" in the '748 patent.[25]  But the court does not see any language in the claims at issue that would support Adaptix's position.  In particular, there is no indication within the claim language to suggest to one skilled in the art a limitation that would necessarily preclude element [a] and simultaneously include elements [b] and [c].

Indeed, the claim language includes "a set" or "a plurality" of subcarriers in various other limitations.  And the specification discloses embodiments in which the subscribers both measure and provide feedback information on all subcarriers—even those not selected as candidates.[26]  The reality is that, to the ordinarily skilled artisan, the antecedent for "each cluster" could potentially be any one or more of the subcarriers recited in the preceding limitations.  But exactly which is not taught or claimed.  The patents disclose embodiments relating to traffic load information on clusters unrelated to the "set of candidate subcarriers" selected by the subscriber, including:

- "[T]he base station further select[ing] the subcarriers among the candidates, utilizing additional information available at the base station, e.g., *the traffic load information on each subcarrier*, amount of *traffic requests queued at the base station for each frequency band*, whether frequency bands are overused, and/or how long a subscriber has been waiting to send information."[27]

- "[T]he subcarrier *loading information of neighboring cells can also be exchanged between base stations*.  The base stations can use this information in subcarrier allocation to reduce inter-cell interference."[28]

- "The base station may utilize additional information available at the base station, e.g., the

---

[24] Case No. 13-01776: Docket No. 309 at 6.

[25] Case No. 13-01776: Docket No. 334 at 4.  Adaptix points out that the same logic applies as to the '212 patent.

[26] Case No. 13-01776: Docket No. 1 at Exh. A, 3:18-38.

[27] *Id.* at 3:31-39 (emphasis added).

[28] *Id.* at 3:38-41 (emphasis added).

7
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

traffic load information on each subcarrier."[29]

Perhaps this explains why even Adaptix's own expert Dr. Michael Caloyannides—someone who is surely considered "one skilled in the art"—cannot seem to settle on the meaning of "each cluster" himself. In some circumstances, he agrees that "each cluster" referred to each and every group of subcarriers reported on, but in other circumstances, he states that each cluster consists of a plurality of subcarriers.[30]

This court is not alone in concluding that this uncertainty renders the claims indefinite. Last September, Judge Craven considered the definiteness of the same claims in light of the term "each cluster." She ultimately recommended granting summary judgment as to claim 8 of the '748 patent and claim 9 of the '212 patent, finding that "[o]n balance, in light of *Nautilus* . . . the disputed term 'each cluster' requires an antecedent basis but lacks any clear antecedent basis. This lack of clear antecedent basis for 'each cluster' . . . renders the claims indefinite as failing to 'inform those skilled in the art about the scope of the invention with reasonable certainty.'"[31]

Judge Schneider subsequently adopted Judge Craven's report and recommendation, rejecting Adaptix's objections that *Nautilus* did not explicitly address abrogation of narrowing instructions: "Indeed, the Supreme Court explicitly identified the 'narrowing construction' standard in a footnote when finding that the standards set forth by the Court of Appeals for the Federal Circuit were 'falling short.' Plaintiff's arguments to the contrary are unavailing. Applying the new standard under *Nautilus*, the recited 'set of candidate subcarriers' is not an explicit antecedent basis

---

[29] *Id.* at 6:16-18.

[30] *See* Case No. 13-01776: Docket No. 360-6 at 180-88. While Dr. Caloyannides offers a different view in a October 17, 2014 declaration to this court, this revised view is nowhere found in his August 27, 2014 expert report on validity and is inconsistent with his July 7, 2014 expert report on infringement (and his August 14, 2014 amended infringement report). "Where an expert's declaration contradicts previous sworn testimony, it is proper for the Court to strike or refuse to consider the same." *See Ramsey Grp., Inc. v. EGS Int'l, Inc.*, 329 F. Supp. 2d 630, 638 (W.D.N.C. 2004) (citing *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298 (Fed. Cir. 2003)). "A party may not submit affidavits purporting to create genuine issues of fact if the affidavits contradict prior sworn testimony." *Id.*

[31] *Adaptix, Inc. v. Huawei Techs. Co. Ltd.*, Case Nos. 6:13-cv-00438, -00439, -00440, -00441, 00443, 00444, 00445, 00446, 2014 U.S. Dist. LEXIS 163839, at *24-25 (E.D. Tex. Sept. 19, 2014).

8
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

and is not a reasonably clear implicit antecedent basis. Thus, 'each cluster' lacks any clear antecedent basis."[32] Ultimately, this court agrees with its sister court that there can be no genuine dispute of material fact as to the validity of claim 8 of the '748 patent and claim 9 of the '212 patent.[33]

### IV.

Defendants' motion for summary judgment of invalidity is GRANTED. The parties shall submit a proposed form of judgment within five days of this order.

**SO ORDERED.**

Dated: January 23, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[32] *See Adaptix, Inc. v. Huawei Techs. Co. Ltd.*, Case Nos. 6:13-cv-00438, -00439, -00440, -00441, 00443, 00444, 00445, 00446, 2014 U.S. Dist. LEXIS 163713, at *20-21, 26 (citations omitted).

[33] Claim 9 of the '748 patent and claim 10 of the '212 patent are dependent claims and thus are also invalid.