*[Counsel Listed In Signature Block]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, INC., | Case No. 5-13-cv-01776-PSG |
| Plaintiff, | **DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| v. | |
| APPLE INC., *et al.*, | Hearing Date:  March 31, 2015, at 10 a.m. |
| Defendants. | Courtroom 5, 4th Floor |
| | Magistrate Judge Paul S. Grewal |

| | |
|---|---|
| ADAPTIX, INC., | Case No. 5-13-cv-01777-PSG |
| Plaintiff, | **DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| v. | |
| APPLE INC., *et al.*, | Hearing Date:  March 31, 2015, at 10 a.m. |
| Defendants. | Courtroom 5, 4th Floor |
| | Magistrate Judge Paul S. Grewal |

| | |
|---|---|
| ADAPTIX, INC., | Case No. 5-13-cv-01778-PSG |
| Plaintiff, | **DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| v. | |
| AT&T MOBILITY LLC, *et al.*, | Hearing Date:  March 31, 2015, at 10 a.m. |
| Defendants. | Courtroom 5, 4th Floor |
| | Magistrate Judge Paul S. Grewal |

| | |
|---|---|
| ADAPTIX, INC., | Case No. 5-13-cv-01844-PSG |
| Plaintiff, | **DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** |
| v. | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, *et al.*, | Hearing Date:  March 31, 2015, at 10 a.m. |
| Defendants. | Courtroom 5, 4th Floor |
| | Magistrate Judge Paul S. Grewal |

1

2
ADAPTIX, INC.,

3
            Plaintiff,

4
        v.

5
APPLE INC., *et al.*,

6
            Defendants.

7

8

Case No. 5-13-cv-02023-PSG

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**

Hearing Date:  March 31, 2015, at 10 a.m.
Courtroom 5, 4th Floor
Magistrate Judge Paul S. Grewal

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

NOTICE OF MOTION AND MOTION ......................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................1

I.      INTRODUCTION ............................................................................................................1

II.     LEGAL STANDARD ......................................................................................................3

III.    *OCTANE FITNESS* AND ITS PROGENY CONFIRM THAT THIS CASE IS
        "EXCEPTIONAL." ..........................................................................................................5

        A.      Adaptix Pursued A Mode 2 Infringement Theory For More Than Two
                Years While Lacking Any Evidence Demonstrating That Mode 2 Was
                Required To Be Used—Much Less Actually Used—In The Accused LTE
                Networks. ..............................................................................................................6

        B.      With Just Four Months Remaining Before The Close Of Fact Discovery,
                Adaptix Began Shifting Its Infringement Theories...............................................14

        C.      Adaptix Selected A Theory Of Infringement For Trial That Was Legally
                And Factually Unsupportable. ..............................................................................17

        D.      Adaptix's Conduct During The Course Of Discovery—And Even Before
                The Case Was Filed—Was Designed To Unreasonably Complicate And
                Increase The Expense For Defendants....................................................................20

        E.      Adaptix Unnecessarily Filed Duplicative Lawsuits Against Defendants. .............22

IV.     CONCLUSION................................................................................................................24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

CASES

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
   Case No. SACV-11-01011 AG, 2015 WL 178417 (C.D. Cal. Jan. 6, 2015) ....................5, 21

*Ericsson, Inc. v. D-Link Systems, Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)...............................................................................18, 19

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
   Case No. 5:13-cv-01708 HRL, 2014 WL 5795545 (N.D. Cal. Nov. 6, 2014) ....................4, 8

*Joy Techs., Inc. v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993) ......................................................................................18

*Kilopass Tech. Inc. v. Sidense Corp.*,
   No. C10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014)...................................4, 17

*Linex Technologies, Inc. v. Hewlett-Packard Co.*,
   Case No. C13-159CW, 2014 WL 4616847 (N.D. Cal. Sept. 15, 2014) ..................................5

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
   24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014)....................................................................4, 20

*Monsanto Co. v. Syngenta Seeds, Inc.*,
   503 F.3d 1352 (Fed. Cir. 2007)....................................................................................18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ......................................................................................3, 20, 25

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006).....................................................................................18

*Pure Fishing, Inc. v. Normark Corp.*,
   Civ. A. No. 10-cv-2140 CMC, 2014 WL 5474589 (D.S.C. Oct. 28, 2014) ......................4, 17

*Ricoh Co. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008)....................................................................................18

*SiRF Tech., Inc. v. Int'l. Trade Comm.*,
   601 F.3d 1319 (Fed. Cir. 2010)...............................................................................18, 19

*Yufa v. TSI Inc.*,
   Case No. 09-cv-1315 KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014)......................4, 8

**STATUTES**

35 U.S.C. § 285.................................................................................................................1, 3

iii

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on March 31, 2015, at 10 a.m. in Courtroom 5, United

4

States District Court for the Northern District of California, Robert F. Peckham Federal Building,

5

280 South 1st Street, San Jose, CA 95113, defendants Apple Inc. ("Apple"), HTC America, Inc.,

6

HTC Corporation (collectively "HTC"), AT&T Mobility LLC ("AT&T"), and Cellco

7

Partnership d/b/a Verizon Wireless ("Verizon") (collectively "Defendants") shall and hereby do

8

move for an order awarding attorneys' fees pursuant to 35 U.S.C. § 285.  This motion is

9

supported by the following Memorandum of Points and Authorities; the Declarations of Mark D.

10

Selwyn, Craig E. Davis, Fred I. Williams, Bryant C. Boren, Jr., Christopher A. Hughes, Michael

11

B. Powell, and Mark D. Flanagan in Support of Defendants' Motion for Attorneys' Fees

12

Pursuant to 35 U.S.C. § 285 and exhibits attached thereto; and such other written or oral

13

argument as may be presented at or before the time this motion is taken under submission by the

14

Court.

15

**MEMORANDUM OF POINTS AND AUTHORITIES**

16

**I.      INTRODUCTION**

17

Adaptix filed these litigations based on a theory that various Apple and HTC products

18

infringe U.S. Patent Nos. 6,947,748 (the "'748 patent") and 7,454,212 (the "'212 patent")

19

because they used CQI reporting Mode 2-x ("Mode 2")—an optional feature in the LTE

20

standard—when communicating channel quality information with base stations in AT&T's and

21

Verizon's LTE networks.  Adaptix actively pursued this theory throughout fact discovery.  It was

22

featured not only in Adaptix's original infringement contentions, but in three subsequent

23

amended versions of its contentions—one of which was as late as February 10, 2014.  Yet from

24

the outset, Adaptix lacked any adequate support for this theory.  Mode 2 is an optional feature in

25

the publicly-available 3GPP LTE standards, thus requiring Adaptix to perform a pre-suit

26

investigation to determine whether Mode 2 was actually used when the accused products

27

operated on the AT&T and Verizon LTE networks.  Had Adaptix performed any testing as part

28

1   of its pre-suit investigation, ███████████████████████████

2   ███████████████████████████   In fact, it is undisputable that Adaptix had no

3   pre-suit evidence that Mode 2 is required to be used—much less actually used—on AT&T's or

4   Verizon's LTE networks.  And even in the face of evidence from their post-filing testing and

5   numerous sources during discovery that ███████████████████████████

6   ███, Adaptix still persisted with its baseless Mode 2 infringement theory.  Indeed, Adaptix

7   did not finally drop its Mode 2 infringement theory until midway through expert discovery.

8        While Adaptix lacked any adequate evidence to support its Mode 2 infringement theory

9   before filing this litigation, it had concluded from the outset that an infringement theory based on

10  a different mode of CQI reporting, Mode 3-x ("Mode 3"), was not viable.  Adaptix's own

11  records show that it concluded—*correctly*—that it should not allege that products using Mode 3

12  infringe.  Nonetheless, after actively pursuing its Mode 2 theory for 18 months, Adaptix began

13  shifting its infringement theories to focus on Mode 3.  In doing so, Adaptix obfuscated as long as

14  possible the actual theories of infringement it intended to take to trial—theories that in turn were

15  shown to be legally and factually unsupportable, consistent with Adaptix's own conclusion at the

16  outset.  In fact, Adaptix did not allege Mode 3 against all claims until it served its expert reports

17  in the summer of 2014—a tactic that prejudiced Defendants, and the Court granted a motion to

18  strike the new theories.  In the end, the sole theory that Adaptix intended to take to trial—that

19  Defendants infringed the asserted method claims by the sale of the accused devices—was

20  unsupported and contrary to Federal Circuit precedent, and ultimately properly dismissed by the

21  Court on defendants' summary judgment motions.

22       Adaptix's misconduct was not limited to its shifting infringement theories.  Adaptix

23  unnecessarily complicated and increased the expense of discovery by repeatedly denying

24  Defendants the discovery to which they were entitled, forcing Defendants to bring repeated

25  motions to compel—all of which the Court granted—and by improperly relying on confidential

26  documents from different lawsuits, which were later stricken by the Court.  Adaptix also

27  repeatedly filed premature and unnecessary additional lawsuits against Defendants, presumably

28

2

1    in the hope that Defendants would settle the lawsuits rather than continue to endure Adaptix's

2    harassing litigation tactics.

3         The exceptional circumstances here justify an award of attorneys' fees under 35 U.S.C.

4    § 285.  As the Supreme Court recently held in *Octane Fitness, LLC v. ICON Health & Fitness,*

5    *Inc.*, 134 S. Ct. 1749 (2014), an exceptional case is "simply one that stands out from others with

6    respect to the substantive strength … or the unreasonable manner in which the case was

7    litigated." 134 S. Ct. at 1756.  In light of the substantive positions and manner in which Adaptix

8    has litigated these cases, a finding of exceptional circumstances and an award of attorneys' fees

9    under 35 U.S.C. § 285 are warranted.

10 **II.     LEGAL STANDARD**

11         Section 285 allows the Court to award reasonable attorney fees to the prevailing party in

12    "exceptional cases."  In *Octane Fitness*, the Supreme Court interpreted the term "exceptional"

13    under the statute "in accordance with [its] ordinary meaning"—"uncommon, rare, or not

14    ordinary." 134 S. Ct. at 1756 (internal citations, quotations omitted).  For purposes of awarding

15    attorneys' fees, an "exceptional case" is one that "stands out" in light of the applicable law,

16    particular facts, and manner in which the case was litigated.  *Id.*  As the Supreme Court

17    explained, "a case presenting either subjective bad faith or exceptionally meritless claims may

18    sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

19         *Octane Fitness* also clarifies that litigants seeking fees need only show exceptional

20    circumstances under a preponderance of the evidence standard, rejecting the Federal Circuit's

21    requirement of "clear and convincing" proof of exceptionality.  Section 285 "imposes no specific

22    evidentiary burden, much less such a high one.  Indeed, patent-infringement litigation has always

23    been governed by a preponderance of the evidence standard." *Id.*  Finally, the Supreme Court

24    directed district courts to determine exceptionality "in the case-by-case exercise of their

25    discretion, considering the totality of the circumstances." *Id.* at 1756.

26         In the short time since *Octane Fitness* issued, unreasonable litigation behavior similar to

27    Adaptix's has resulted in the award of fees.  For example, courts have awarded fees based on a

28

       Defendants' Motion for Attorneys' Fees
Pursuant to 35 U.S.C. § 285

1   plaintiff's failure to conduct a reasonable pre-suit investigation. *See, e.g., IPVX Patent Holdings,*

2   *Inc. v. Voxernet LLC*, Case No. 5:13-cv-01708 HRL, 2014 WL 5795545, at *6 (N.D. Cal. Nov.

3   6, 2014) (awarding fees in part because plaintiff prosecuted the case in "assembly-line fashion"

4   by serving a "boilerplate" complaint on dozens of defendants without ever demonstrating that it

5   performed an adequate pre-suit investigation); *Yufa v. TSI Inc.*, Case No. 09-cv-1315 KAW,

6   2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) (awarding fees in part because "Plaintiff did

7   not purchase or test any of the accused products before filing his amended complaint" and relied

8   instead on advertisements and articles).

9       Other courts have awarded fees due to the timing or frequency with which a plaintiff

10  shifted around its infringement theories. *See, e.g., Kilopass Tech. Inc. v. Sidense Corp.*, Case

11  No. C10-02066 SI, 2014 WL 3956703, at *13 (N.D. Cal. Aug. 12, 2014) (awarding fees because

12  plaintiff could not present "any legitimate reason for why it had to change its theory of

13  infringement so late in the litigation" and finding "[i]nstead, it simply appears that [plaintiff], its

14  infringement expert, or both did not like the theory of infringement that was contained in

15  [plaintiff]'s infringement contentions and decided to try a different theory at the expert discovery

16  stage, hoping it would be better"); *E-Pass Techs., Inc. v. 3com Corp*, *et al*., C.A. No. C-04-0528,

17  Doc. No. 474, at 26-27 (N.D. Cal. Nov. 21, 2006) (finding that plaintiff had "engaged in

18  vexatious or unjustified litigation" where the plaintiff's "litigation practice in the case against

19  [defendant] has been marked by changing theories of liability; [and] by motions to compel

20  compliance by [plaintiff] with disclosure rules."); *Pure Fishing, Inc. v. Normark Corp.*, Civ. A.

21  No. 10-cv-2140 CMC, 2014 WL 5474589, at *5 (D.S.C. Oct. 28, 2014) ("The court finds that

22  these shifting positions resulted in an unwarranted increase in the expense of litigation . . . and

23  support a finding that [plaintiff] litigated . . . in an unreasonable manner."). A plaintiff's

24  unreasonable disregard of facts that contradicted its infringement theory also has been a basis for

25  fee awards, *see, e.g., Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336

26  (S.D.N.Y. 2014) (finding a fee award appropriate where plaintiff was put on notice by

27  defendant's counsel of facts undermining plaintiff's infringement theory but the plaintiff

28

4

1   continued to be "manifestly unreasonable in assessing infringement") (citing *Eltech Sys. Corp. v.*

2   *PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990)), as has a plaintiff's discovery misconduct

3   and stalling tactics, *see, e.g., Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, Case No. SACV-11-

4   01011 AG, 2015 WL 178417, at \*7 (C.D. Cal. Jan. 6, 2015) (awarding fees in part because

5   plaintiff's discovery misconduct, including "unnecessarily dragg[ing] out these discovery

6   proceedings" and attempting to schedule depositions for holidays, "strongly suggests harassment

7   and reinforces the conclusion that [plaintiff] litigated against [defendant] in an unreasonable

8   manner."). Fees also have been awarded due to a plaintiff's serial filing of lawsuits against a

9   defendant. *See, e.g., Linex Techs., Inc. v. Hewlett-Packard Co.*, Case No. C13-159CW, 2014

10  WL 4616847, at \*3 (N.D. Cal. Sept. 15, 2014) (awarding fees where plaintiff filed multiple cases

11  against the same party because, although *res judicata* was not implicated, plaintiff "was not free

12  to pursue another case targeting the same technology with impunity."). Adaptix managed to

13  engage in *all* the above conduct during the course of pursuing this litigation.

14  **III.     *OCTANE FITNESS* AND ITS PROGENY CONFIRM THAT THIS CASE IS
           "EXCEPTIONAL."**

15

16         For two years, Adaptix pursued an infringement theory based on Mode 2 that an adequate

17  pre-suit investigation would have proven to be unsupportable. Mode 2 is an optional feature of

18  the publicly-available 3GPP LTE standard, and Adaptix knew or should have known that it

19  would need proof that the base stations on Verizon's and AT&T's LTE networks used Mode 2 to

20  communicate channel quality information with the accused Apple and HTC products. Equally

21  inexplicable, Adaptix ███████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████          ▬

25  ██████████████████████████████████████████████████████████████████████████████

26  ───────────────────────────
    [1] The exhibits referenced in this Motion are attached to one of three supporting declarations as
    follows: (a) Exhibits 1 through 15 are attached to the Declaration of Craig E. Davis; (b) Exhibit

27  16 is attached to the Declaration of Michael B. Powell; and (c) Exhibits 17 through 21 are
    attached to the Declaration of Fred I. Williams.

28

                                                  5

1   ████████████████████████████████████████████   Only

2   when faced with the hard reality that its own expert, Dr. Caloyannides, would not stand behind

3   the Mode 2 theory did Adaptix finally agree to drop it.  In its place, Adaptix substituted a Mode

4   3 theory of infringement that it had determined early on should not form the basis for its case.

5   And for this theory as well, Adaptix repeatedly and improperly followed a shifting sands

6   approach, ultimately forcing Defendants to move to strike new theories, which the Court granted.

7   The final theory that Adaptix chose to proceed on for trial—that Defendants directly infringed

8   the asserted method claims by their sale of accused devices—was directly contrary to Federal

9   Circuit precedent and should never have been pursued.

10          A.      **Adaptix Pursued A Mode 2 Infringement Theory For More Than Two Years
                    While Lacking Any Evidence Demonstrating That Mode 2 Was Required To
11                  Be Used—Much Less Actually Used—In The Accused LTE Networks.**

12          The LTE Standard contains provisions that address whether and how a mobile handset

13   device (referred to in the Standard as "user equipment" or "UE") will report feedback on channel

14   quality (referred to in the Standard as "channel quality indicators" or "CQI") to base stations in a

15   carrier's LTE network.  (*See* Ex. 2 [3GPP TS 36.213 v. 8.8.0].)  The LTE Standard specifies

16   three distinct types of CQI feedback reporting:  Mode 1, Mode 2, and Mode 3.  (*See id.* at 36-46.)

17   In Mode 1, the UE reports a wideband CQI value for the entire available bandwidth.  (*See id.* at

18   37, 44.)  In Mode 2, the UE reports a wideband value along with a CQI value associated with

19   only *some* of the subbands in the bandwidth.  (*See id.* at 38-39, 44-46.)  In Mode 3, the UE

20   reports a wideband value, along with individual values associated with *all* of the subbands in the

21   bandwidth.  (*See id.* at 37-38.)

22          On August 10, 2012, Adaptix served its original infringement contentions, which it later

23   amended with the Court's leave on August 30, 2013 and December 2, 2013.  (*See* Exs. 3, 4

24   [Infringement Contentions served on Apple on 8/10/2012 and 8/30/2013 (-1776 case)]; Ex. 5

25   [Cover Pleading for Infringement Contentions served on Apple on 12/2/2013 (-1776 case)];

26   Exs. 17, 18 [Infringement Contentions served on HTC on 8/10/2012 and 8/30/2013 (-1778

27   case)]; Ex. 19 [Cover Pleading for Infringement Contentions served on HTC on 12/2/2013 (-

28

6

1    1844 case)].)[2]  Adaptix also served additional contentions against HTC products on March 22,

2    2013 and April 4, 2013.  (*See* Exs. 20, 21 [Cover Pleadings for Infringement Contentions served

3    on HTC on 3/22/2013 and 4/4/2013 (-1778 case].)  Each of these sets of contentions alleged that

4    Defendants' accused products infringed the patents by communicating channel quality

5    information with the base stations on AT&T's and Verizon's LTE networks using Mode 2.  (*Id.*)

6    Specifically, in the charts for claims 6 and 8 of the '748 patent in each set, Adaptix alleged that

7    the claim limitation "the subscriber selecting a set of candidate subcarriers" was met because

8    "UEs can select sets of subcarriers (organized as PRBs, which in turn are organized as subbands)

9    in various ways (e.g., including but not limited to Mode 2-0, Mode 2-1 and Mode 2-2) and report

10   CQI information for the selected subcarriers."  (Ex. 3, chart for '748 patent at 9, 46; Ex. 4, chart

11   for '748 patent at 11, 52.)[3]  This same allegation also was made for the "selecting" limitations in

12   claims 19 and 21 of the '748 patent.  (Ex. 3, chart for '748 patent at 136, 186; Ex. 4, chart for

13   '748 patent at 148, 202.)  By contrast, no similar references to or discussions of Mode 3 appear

14   anywhere in the charts.  (*See* Exs. 3, 4.)

15          The only "evidence" cited in the charts in support of Adaptix's Mode 2 allegations,

16   however, were broad "cut and paste" reproductions of large passages from the LTE Standard.

17   (*See* Ex. 3, chart for '748 patent at 9-20, 46-58, 137-148, 186-197; Ex. 4, chart for '748 patent at

18   11-23, 52-64, 149-161, 203-215 (all showing reproductions of the same broad excerpts from

19   Section 7.2 of 3GPP TS 36.213 v. 8.8.0).)  The problem with Adaptix's theory from the outset

20

21   [2] To minimize the burden on the Court, only the cover pleading for the December 2, 2013
     contentions has been included in Exhibits 5 and 19.  The infringement charts served by Adaptix
22   on Apple and HTC on that date for the '748 and '212 patents were substantively identical to the
     charts served on Apple and HTC on August 30, 2013, which are included in Exhibits 4 and 18.
23   The only difference was the list of products identified in footnote 1 on page 1 of each chart.

24   [3] Adaptix's infringement contentions against Apple and HTC products are largely identical.  For
     example, the same language related to Mode 2 may be found in the HTC contentions.  (*See*
25   Ex. 17 [Aug. 10, 2012 -1778 chart for '748 patent] at 9, 46; Ex. 18 [Aug. 30, 2013 -1778 chart
     for '748 patent] at 11, 51.)  Further, Adaptix's other allegations of infringement do not differ
26   between wireless carriers—*e.g.*, the -1776 contentions for Apple and Verizon are identical in all
     material respects to the -1777 and -2023 contentions for Apple and AT&T.  Therefore, for ease
27   of the Court and to simplify the citations, throughout this motion, Defendants will only reference
     the infringement contentions in the -1776 case because reference to the other contentions would
28   be redundant.

7

1   was that, as acknowledged by one of Adaptix's own experts, Mode 2 is an *optional* feature of the

2   LTE Standard that does not need to be implemented in an LTE network:

> Q.  Okay.  What is your understanding of -- or what do you mean by mandatory in the LTE network?
>
> A.  Well, so, for example, OFDMA is essentially, and I suppose a mandatory part of the LTE system.  Cell-specific reference signals is another example.
>
> Q.  Is feedback reporting an example of something you consider mandatory?
>
> A.  No.
>
> Q.  Is Mode 3 feedback reporting something you consider mandatory?
>
> A.  I do not.
>
> Q.  How about Mode 2?  Is Mode 2 something you consider mandatory?
>
> A.  I do not.

(Ex. 6 [Jones 12/2/2014 Dep.] at 121:18-122:6.)

Given the optional nature of Mode 2, Adaptix had an obligation to conduct pre-suit testing to determine whether Mode 2 functionality was being utilized by Defendants' products on AT&T's and Verizon's LTE networks.  *See, e.g., IPVX*, 2014 WL 5795545, at *6 (awarding fees in part because plaintiff prosecuted the case in "assembly-line fashion" by serving a "boilerplate" complaint on dozens of defendants without ever demonstrating that it performed an adequate pre-suit investigation); *Yufa*, 2014 WL 4071902, at *3 (awarding fees in part because "Plaintiff did not purchase or test any of the accused products before filing his amended complaint" and relied instead on advertisements and articles).

When defendants tried deposing Adaptix's 30(b)(6) witness, Curtis Dodd, to determine whether Adaptix had done any such testing as part of its pre-suit investigation, Adaptix's counsel blocked such inquiry on the basis of privilege:

> Q.  Has Adaptix ever done any testing to determine whether AT&T's or Verizon's LTE network uses aperiodic reporting mode 2-0?
>
> MR. LIPMAN:  Expert testimony.  And I caution you not to reveal any communications with counsel that might be relevant to this question.

8

1

THE WITNESS:  I be -- I don't know how to answer that without stepping on the -- on the privilege -- privilege aspect.

2

MR. LIPMAN:  If that's the case, I instruct you not to answer.

3

(Ex. 7 [Dodd 3/20/2014 Dep.] at 152:5-15.)

4

However, upon further questioning, Adaptix's 30(b)(6) witness admitted that

5

Adaptix had no such testing on which to rely to support its allegations of infringement

6

under Mode 2:

7

BY MR. SELWYN:

8

Q.  Is Adaptix relying on [sic] this case on any testing to show that AT&T's or Verizon's LTE network uses -- has used or is capable of using aperiodic reporting mode 2-0?

9

10

…

11

THE WITNESS:  I'm not aware of us relying on it at this time.

12

BY MR. SELWYN:

13

Q.  Is Adaptix relying on any testing to show that AT&T's or Verizon's LTE network uses, has used or is capable of using aperiodic reporting mode 2-2?

14

15

…

16

THE WITNESS:  I'm not aware of us relying on any testing for that purpose at this time.

17

BY MR. SELWYN:

18

Q.  Is Adaptix relying on any testing to show that AT&T's or Verizon's LTE network uses, has used or is capable of using periodic mode 2-0 or periodic reporting mode 2-1?

19

20

…

21

THE WITNESS:  I'm not aware of us relying on any testing for that purpose at this time.

22

(Ex. 7 [Dodd 3/20/2014 Dep.] at 152:17-154:1.)  Plainly, either Adaptix never performed any

23

pre-suit testing to verify whether Mode 2 was being used by Defendants' products on AT&T's or

24

Verizon's LTE networks in the United States, or Adaptix performed pre-suit testing but failed to

25

identify any such use.  Regardless of which is the answer, the end result is the same, *i.e.*, Adaptix

26

chose to pursue a lawsuit against Defendants based on an infringement read against *optional*

27

functionality in the LTE standard for which Adaptix had *no evidence* that it was being used.  (*See*

28

9

1  *also id.* at 143:11-152:4 (acknowledging that Adaptix did not have any evidence that Mode 2

2  was actually implemented or used in AT&T's and Verizon's LTE networks).)  In other words,

3  Adaptix had no Rule 11 basis for litigating against Defendants based on its Mode 2 theory of

4  infringement, as borne out by Adaptix's eventual abandonment of this infringement theory in the

5  midst of expert discovery.

6          Compounding Adaptix's unreasonable decision to litigate against Defendants over

7  Mode 2 is the fact that—█████████████████████████████████████

8  ███████████████████████████████████████████████

9  ███████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ███████████████████

15     Adaptix ██████████████████████████████████████████

16 ████████

17     Q. █████████████████████████████████████

18 █████████████████████████████

19     …

20     THE WITNESS: ████████████████████████████

21 ███████████████████████

22     BY MR. KUBEHL:

23     Q. ████████████████████████████████

24 ██████████████

25     …

26     THE WITNESS: ██████████████████████████████

27 ████████████████████████████████████████████

28 ████████████████████████████████████████████

███████████████████████████████████████████

10

1

2

3   …

4   BY MR. KUBEHL:

5   Q.

6   A.  (Indicating.)

7   Q.

8   A.

9   Q.  And that's you?

10  A.  Yes.

11  Q.

12       Do you see that?

13  A.  I do.

14  Q.  Next paragraph do you see

15       Do you see that?

16  A.  Yes.

17  Q.

18  …

19  BY MR. KUBEHL:

20  Q.  For identification purposes.

21  A.  Yes.

22  Q.

23  A.

24  Q.

25  A.

26  Q.

27  A.

28



11

Q. Okay.

███████████████████████████████████████████

Do you see that?

███████████████████████████████████████████

…

THE WITNESS: ███████████████████████

(Ex. 8 at 459:24-460:21; Ex. 9.)

Q. With respect to Ericsson base stations, as you sit here today, are you aware of any test that's ever been done by Adaptix that showed that an Ericsson base station actually used Reporting Mode 2-X?

A. Sitting here today, I can't remember any.

(Ex. 8 at 463:11-15.)

Q. Are you, sir, aware of any test that's ever been done by Adaptix that shows that a defendant in this lawsuit actually used Reporting Mode 2-X?

…

THE WITNESS: I'm not aware of any tests, such tests.

(*Id.* at 464:16-23.)

Defendants and multiple third parties even informed Adaptix repeatedly throughout the course of fact discovery ████████████████████████████████████████ ████████████████, including from the following sources:

- Documents produced by AT&T on April 2, 2013, including AT&T0320156-269, AT&T0739306, and AT&T0740527.

- Documents produced by Verizon on June 7, 2013, including VZW_0556627.

12

- Declaration of Derek Bao, a Verizon employee, filed under seal at Dkt. No. 117-6 in Case No. 6:12-cv-00120 (E.D. Tex. July 18, 2013).

- AT&T's Objections and Responses to Adaptix's First Set of Interrogatories in Case No. 6:12-cv-00017-MHS-CMC (E.D. Tex. Oct. 9, 2013), which state that the ████████████████████████████████████████████

- Documents produced from third party base station manufacturer Ericsson on October 31, 2013, including ERIC-SUBP-00000027 at 031-032, ERIC-SUBP-00000066 at 070-071, and ERIC-SUBP-00000122 at 126-127.

- Deposition of Christian Skarby, an employee of third party base station manufacturer Ericsson, on April 4, 2014.

- Deposition of Derek Bao, a Verizon employee, on May 2, 2014.

- Deposition of Navid Damji, an Apple employee, on May 5, 2014.

- Deposition of Andrew Youtz, a Verizon employee, on May 22, 2014.

- Deposition of Laurie Bigler, an AT&T employee, on May 29, 2014.

- Documents produced from third party base station manufacturer Alcatel-Lucent no later than May 2014.[4]

- Deposition of Francis Dominique, an employee of third party base station manufacturer Alcatel-Lucent, on June 2, 2014.

(*See also* Ex. 10 [Stark Expert Report for -1776 case dated 8/27/2014] at ¶ 269 (cataloging evidence that █████████████████████████████████; Ex. 11 [Stark Expert Report for -1777/-2023 cases dated 8/27/2014] at ¶ 246 (cataloging evidence that ████ █████████████████████████████.) Yet Adaptix inexplicably persisted with

---

[4] Defendants' understanding is that the documents from Alcatel-Lucent relating to Mode 2 were first produced to Adaptix well before May 2014 in the base station litigation in the Eastern District of Texas. Those documents, however, may not have been reproduced to Adaptix in these cases until May 2014.

DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285

1    its Mode 2 allegations well into expert discovery, abandoning them in their entirety only when

2    Adaptix's expert, Dr. Caloyannides, amended his expert report on August 14, 2014 (*see infra*).

3            In short, not once prior to or during the course of these lawsuits did Adaptix ever identify

4    any evidence that any products use Mode 2—an optional component of the LTE Standard—on

5    AT&T's or Verizon's LTE networks.  On that basis alone, Adaptix's litigation against

6    Defendants for more than two years based on a Mode 2 theory of infringement was unwarranted,

7    unreasonable, and exceptional under *Octane Fitness* and its progeny.

8        **B.    With Just Four Months Remaining Before The Close Of Fact Discovery,
             Adaptix Began Shifting Its Infringement Theories.**

9

10           In stark contrast to the emphasis on Mode 2, Adaptix's infringement contentions did not

11   discuss Mode 3 as an infringement theory until January 31, 2014, when Adaptix served amended

12   infringement contentions just four months before the fact discovery cutoff and disclosed—for the

13   first time—Adaptix's new "select all" theory of infringement based on Mode 3.  This new

14   Mode 3 "select all" theory appeared to be a secondary infringement theory for Adaptix, as

15   Mode 3 was discussed and cited only with regard to three limitations in claim 8 of the

16   '748 patent and three limitations in claims 1 and 15 of the '212 patent.  (Ex. 12 [Infringement

17   Contentions for '748 Patent dated 1/31/2014 (-1776 case)] at 52, 59, 64, 72; Ex. 13

18   [Infringement Contentions for '212 Patent dated 2/10/2014 (-1776 case)] at 20, 21, 29, 31, 38.)[5]

19   By comparison, Mode 2 still appeared to comprise Adaptix's lead theory of infringement, as it

20   was discussed and cited in Adaptix's contentions in support of multiple limitations in claims 6, 8,

21   11, 19, and 21 of the '748 patent and claims 1, 13, 18, and 28 of the '212 patent.  (Ex. 12 at 9,

22   17, 23-26, 29, 31, 33, 50, 58, 59, 62, 68, 71, 80, 83, 95, 99, 100, 102, 116, 119, 123, 126-128,

23   131, 133, 134, 143, 146, 155, 158, 159; Ex. 13 at 18, 19, 27-29, 31, 32, 37, 44, 46, 50, 52, 65, 68,

24   70, 73-75, 87.)

25

26   _____

27   [5] Adaptix's disclosure in the infringement contentions against HTC served on January 31 and
     February 10, 2014 was again nearly identical to those against Apple.  (*See* Declaration of Fred I.
     Williams at ¶ 21.)

28

1    The appearance of Adaptix's new "select all" theory based on Mode 3 was surprising not

2    only because it had not been previously disclosed, but also because Adaptix's reliance on

3    Mode 3 conflicted with its own conclusion early in the litigation.  Specifically, Adaptix produced

4    a ███████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████

6

7

8

9

10

11

12

13

14

15

16

17

18

19    ████████████████████████████████████  Yet despite its own analysis and

20    conclusions, Adaptix chose to inject infringement theories based on Mode 3 into the litigation.

21          On July 7, 2014, Adaptix served its opening expert reports on infringement from Dr.

22    Michael Caloyannides.  The theories set forth in Dr. Caloyannides' reports, however, departed

23    starkly from those advanced in Adaptix's amended infringement contentions served only six

24    months earlier.  Those discrepancies included the following:

25          1.  Dr. Caloyannides advanced previously-undisclosed contributory infringement

26              allegations, and abandoned the induced infringement allegations that appeared in

27              the contentions.

28

15

2.   He embraced a previously-undisclosed Mode 3 theory of infringement for Adaptix's asserted apparatus claims, and abandoned the Mode 2 theory that appeared in the contentions.

3.   He offered an entirely new "selection" theory for all the claims based on Mode 3, and abandoned the prior Mode 3 "select all" theory that had been disclosed in the contentions.

4.   He appeared to abandon Mode 2 in its entirety as a theory of infringement, except for an alleged incorporation by reference of all of Adaptix's various infringement contentions.

Ten days after serving Dr. Caloyannides' reports, and in a belated effort to rectify some of the disparities between them and the contentions, Adaptix moved for leave to amend its contentions to add a theory of contributory infringement.  (*See* Dkt. No. 246[6] [Motion to Amend dated 7/17/2014].)  Defendants opposed because of Adaptix's untimeliness and lack of diligence and the severe prejudice to Defendants.  (*See* Dkt. No. 250 [Opposition to Motion to Amend dated 7/24/2014].)  After a hearing on July 28, 2014, the Court agreed with defendants and denied Adaptix's motion.  (*See* Dkt. No. 252 [Minute Order dated 7/28/2014].)

As to the remaining disparities, defendants initially requested that Adaptix voluntarily withdraw Dr. Caloyannides' newly-disclosed infringement theories.  (Ex. 15 [Hughes Letter to Ercolini dated 7/20/2014].)  When Adaptix refused to do so, defendants were left with no choice but to move to strike them.  (*See* Dkt. No. 254 [Defendants' Motion to Strike dated 7/29/2014].)  On August 8, 2014, the Court issued an Order striking Dr. Caloyannides' new Mode 3 theory of infringement for the asserted apparatus claims, in addition to his new "selection" theory based on Mode 3, finding that Adaptix had offered "no real explanation of why it could not have disclosed their new theories in its earlier contentions."  (Dkt. No. 273 [Order dated 8/8/2014] at 5.)  As for Dr. Caloyannides' incorporation by reference of all infringement contentions, while the Court

---

[6] All docket citations will refer to docket entries in Case No. 5:13-cv-01776-PSG unless otherwise noted.

1    observed that "the references to theories here such as induced infringement that are no longer

2    asserted and contentions that have been superseded is difficult to follow or reconcile" (*id.*), the

3    Court permitted Adaptix to serve an amended report from Dr. Caloyannides by no later than

4    August 14, 2014 that specifically identified those portions of the contentions he was

5    incorporating (*id.*).  When the amended report was served on August 14, it confirmed that

6    Adaptix had completely abandoned Mode 2 in favor of a Mode 3 theory of direct infringement

7    for method claims only, the theory that Adaptix would unsuccessfully attempt to take to trial.

8          The radical shifts in Adaptix's infringement theories over the course of this litigation

9    demonstrated a staggering lack of pre-suit investigation and preparation, which—in combination

10    with Adaptix's persistence in asserting Mode 2 as a basis for infringement in the face of

11    overwhelming evidence contradicting such a theory, and Adaptix's repeated shifting of its

12    infringement theories—was unwarranted, unreasonable, and exceptional under *Octane Fitness*

13    and its progeny.  *See, e.g., Kilopass Tech.*, 2014 WL 3956703, at \*13 (awarding fees because

14    plaintiff could not present "any legitimate reason for why it had to change its theory of

15    infringement so late in the litigation" and finding "[i]nstead, it simply appears that [plaintiff], its

16    infringement expert, or both did not like the theory of infringement that was contained in

17    [plaintiff]'s infringement contentions and decided to try a different theory at the expert discovery

18    stage, hoping it would be better."); *see also Pure Fishing*, 2014 WL 5474589, at \*5 ("The court

19    finds that these shifting positions resulted in an unwarranted increase in the expense of litigation

20    . . . and support a finding that [plaintiff] litigated . . . in an unreasonable manner."); *E-Pass*

21    *Techs.*, C.A. No. C-04-0528, Doc. No. 474, at 26 (awarding fees under the stricter pre-*Octane*

22    *Fitness* standard where plaintiff's "litigation practice in the case against [defendant] has been

23    marked by changing theories of liability.").

24          **C.     Adaptix Selected A Theory Of Infringement For Trial That Was Legally And
              Factually Unsupportable.**

25

26          By mid-August 2014 when Dr. Caloyannides amended his expert reports to incorporate

27    specific portions of the infringement contentions by reference, Adaptix had (finally) committed

28

CASE NOS. 5:13-cv-01776, -01777,                    DEFENDANTS' MOTION FOR ATTORNEYS' FEES
-01778, -01844, -02023                              PURSUANT TO 35 U.S.C. § 285

1   itself to the infringement theory it intended to take to trial, *i.e.*, a Mode 3 theory of direct

2   infringement of the asserted method claims based on sales by defendants of the accused

3   products.  On September 26, 2014, defendants moved for summary judgment of non-

4   infringement because Adaptix's theory ran directly contrary to Federal Circuit precedent.  The

5   Court agreed, granting the motions on January 20, 2015.

6          As Defendants explained in their motions for summary judgment, it is a well-established

7   and fundamental principle of patent law that the sale of an apparatus cannot directly infringe a

8   method claim—even if it is programmed only to perform the method—because the "sale of the

9   apparatus is not a sale of the method."  *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-75 (Fed.

10  Cir. 1993); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[W]e

11  hold that a party that sells or offers to sell software containing instructions to perform a patented

12  method does not infringe the patent under § 271(a)."); *Monsanto Co. v. Syngenta Seeds, Inc.*, 503

13  F.3d 1352, 1360 (Fed. Cir. 2007) ("[A] method or process claim is directly infringed only when

14  the process is performed."); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir.

15  2006) ("Method claims are only infringed when the claimed process is performed, not by the sale

16  of an apparatus that is capable of infringing use.").  Adaptix nonetheless tried to claim that *SiRF*

17  *Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010), stood for the proposition that

18  "if an entity provides to an end user a device programmed to automatically perform a step of a

19  method claim, then the law will attribute to that entity the use of that device to perform the step."

20  (Dkt. No. 336-3 [Opposition to Apple's Motion for Summary Judgment dated 10/17/2014] at 3.)

21  That claim, however, was not well founded.  Simply put, *SiRF* contains no such statement of law.

22          Furthermore, for *SiRF* to stand for such a proposition, the Federal Circuit sitting *en banc*

23  would have needed to hold that *SiRF* overruled cases such as *Joy Technologies*, *Ricoh*, and the

24  numerous other Federal Circuit cases that stand for the principle that the sale of a product

25  capable of performing the patented method is *not* an act of infringement.  Of course, the Federal

26  Circuit has never so held.  In fact, the Federal Circuit recently confirmed in *Ericsson, Inc. v. D-*

27

28

CASE NOS. 5:13-cv-01776, -01777,                    DEFENDANTS' MOTION FOR ATTORNEYS' FEES
-01778, -01844, -02023                              PURSUANT TO 35 U.S.C. § 285

1    *Link Systems, Inc.*, 773 F.3d 1201 (Fed. Cir. 2014), both the continued viability of those cases

2    and that Adaptix's interpretation of *SiRF* was incorrect.  Specifically, the Federal Circuit wrote:

> Contrary to Ericsson's assertions, our decision in *SiRF* did not create
> direct infringement liability whenever an alleged infringer sells a product
> that is capable of executing the infringing method.  Our decision in *SiRF* is
> not applicable here because all of the steps of the method in claims 1 and 2
> of the '215 patent are performed on the end product, which is controlled
> by a third party.  *See SiRF*, 601 F.3d at 1331.  Unlike the method in *SiRF*,
> there are no steps automatically performed by equipment controlled by D-
> Link.  In fact, none of our decisions have found direct infringement of a
> method claim by sales of an end user product which performs the entire
> method, and we decline to do so here.  Because Ericsson cannot point to
> any evidence in the record that D-Link performed the infringing steps, or
> that any of its customers were under its direction or control, the jury did
> not have substantial evidence to find *direct* infringement of claims 1 and 2
> of the '215 patent.

*Ericsson*, 773 F.3d at 1221-22.  The *Ericsson* decision reaffirmed the long-standing teachings of

*Joy Technologies* and *Ricoh* that a party *cannot* be held liable for direct infringement of a method

claim simply by selling a product capable of performing the patented method.  By nonetheless

choosing to pursue a contradictory theory of infringement, Adaptix unreasonably chose to press

meritless claims in an attempt to get to trial.

Moreover, in a last-ditch effort to save its litigation, Adaptix asserted that if sales were

insufficient to demonstrate direct infringement, then it would present evidence at trial that

defendants had used the accused products in a manner that infringed the asserted method claims.

This assertion, however, was unsupported.  Adaptix presented no theory or evidence that

Defendants' own use of the accused products could support Adaptix's claim for substantial

damages through the life of the patents.  And as the Court unequivocally observed, "[n]one of the

evidence cited by Adaptix shows any individual acting on behalf of Defendants using an accused

handset to perform any claimed method."  (Dkt. No. 405 [Order Granting Motions for Summary

Judgment dated 1/20/2015] at 6.)

Right up until the very end, Adaptix insisted on pursuing allegations that were legally and

factually deficient, so deficient that defendants secured findings of non-infringement not at trial,

19

but on summary judgment.  The positions taken by Adaptix and the manner in which it chose to

litigate these cases "sufficiently set[s] [them] apart from mine-run cases to warrant a fee award."

*Octane Fitness*, 134 S. Ct. at 1757; *see also Lumen View*, 24 F. Supp. 3d at 336 (finding a fee

award appropriate where plaintiff was put on notice by defendant's counsel of facts undermining

plaintiff's infringement theory but the plaintiff continued to be "manifestly unreasonable in

assessing infringement") (citing *Eltech*, 903 F.2d at 811).

**D.      Adaptix's Conduct During The Course Of Discovery—And Even Before The Case Was Filed—Was Designed To Unreasonably Complicate And Increase The Expense For Defendants.**

Throughout the course of fact and expert discovery, Adaptix also repeatedly chose to take

steps designed to frustrate and complicate defendants' discovery efforts in ways that significantly

increased the expense of the litigation.  For example, Adaptix repeatedly forced Defendants to

pursue motion practice simply to hold Adaptix to its discovery obligations.  The motion to strike

that Defendants brought during the course of expert discovery has already been addressed

elsewhere in this brief in the context of Adaptix's shifting infringement theories.  In addition,

during the course of fact discovery, Defendants had to bring no fewer than four motions to

compel Adaptix to provide various information, all of which were resolved in Defendants' favor.

Those motions included:

1.    Apple's and Verizon's Motion to Compel Adaptix to produce certain written

      discovery responses made by Adaptix, depositions taken of Adaptix witnesses,

      and document productions made by Adaptix in cases involving the '748 and '212

      patents or similar patents (Dkt. No. 172 [Motion to Compel dated 3/17/2014]),

      which was resolved favorably by Stipulation two days before the hearing (Dkt.

      No. 175 [Stipulation dated 3/26/2014]).

2.    Apple's and Verizon's Motion to Compel (which HTC and AT&T joined)

      Adaptix to amend its privilege logs in order to permit assessment of whether the

      documents identified on the logs were properly withheld (Dkt. No. 178 [Motion to

20

1    Compel dated 4/7/2014]; -1778 case, Dkt. No. 186), which the Court granted

2    (Dkt. No. 195 [Order dated 4/17/2014]).

3        3.   Defendants' Motion to Compel a three-hour deposition of Matthew Vella (Dkt.

4             No. 180 [Motion to Compel dated 4/7/2014]), which the Court granted (Dkt.

5             No. 195 [Order dated 4/17/2014]).

6        4.   Apple's Motion to Compel Adaptix to produce email and an accompanying

7             privilege log responsive to Apple's custodian-specific search terms (Dkt. No. 207

8             [Motion to Compel dated 4/30/2014]), which the Court granted (Dkt. No. 215

9             [Minute Order dated 5/9/2014]).

10       5.   AT&T's Motion to Strike (which Apple and HTC joined) portions of Adaptix's

11            expert report from Dr. Caloyannides on infringement issues that cited to and

12            relied upon confidential and unproduced documents from a separate lawsuit (the

13            "ATTM- documents") (Dkt. No. 295 in the -1777 case, Dkt. No. 274 in the -2023

14            case [Motion to Strike dated 8/13/2014]), which the Court granted (Dkt. No. 302

15            in the -1777 case, Dkt. No. 281 in the -2023 case [Order dated 8/26/2014]).

16       Adaptix's improper behavior even preceded the filing of these lawsuits.  Indeed, as

17   described in great detail in AT&T's briefing in connection with Adaptix's Motion for Summary

18   Judgment on the "Project Angel" issues, Adaptix surreptitiously and improperly acquired

19   employees of AT&T as well as AT&T's technology—technology on which it sued Defendants

20   for infringement.  (Dkt. No. 377 in the -1777 case, Dkt. No. 349 in the -2023 case [AT&T's

21   Brief in Response to Adaptix's Motion for Summary Judgment dated 10/17/2014].)

22       All these tactics by Adaptix resulted in significant added expense to Defendants,

23   expenses that should have been unnecessary had Adaptix simply conducted itself reasonably and

24   complied with its discovery and other obligations under the Federal and Local Rules.  *See, e.g.,*

25   *Cambrian*, 2015 WL 178417, at *7 (awarding fees in part because plaintiff's discovery

26   misconduct, including "unnecessarily dragg[ing] out these discovery proceedings" and

27

28

1    attempting to schedule depositions for holidays "strongly suggests harassment and reinforces the

2    conclusion that [plaintiff] litigated against [defendant] in an unreasonable manner.").

3       **E.    Adaptix Unnecessarily Filed Duplicative Lawsuits Against Defendants.**

4           In the past three years, Adaptix has filed no less than seven almost-identical patent

5    infringement lawsuits against Apple and six almost-identical lawsuits against HTC.  Each one

6    has asserted infringement of the '748 and '212 patents, has accused products that are essentially

7    the same with regard to the accused functionality, and has named either Verizon or AT&T as co-

8    defendants.  Those lawsuits include the following:

9       **HTC:**

10           1.   Two cases filed in the U.S. District Court for the Eastern District of Texas—first

11               on January 13, 2012, naming HTC, AT&T, and Verizon all as defendants, before

12               becoming separate suits on March 9, 2012, one with Verizon as a co-defendant

13               (Case No. 6:12-cv-00121) and one with AT&T (Case No. 6:12-cv-00019).  The

14               Complaints named the HTC Jetstream and HTC Vivid (AT&T) and the HTC

15               Rezound and HTC Thunderboltas (Verizon) as accused products, but the lists

16               were later expanded to include all LTE-capable HTC products on the market as of

17               December 2, 2013.  Both cases were transferred to this District by Order dated

18               March 28, 2013, assigned Case Nos. 5:13-cv-01778 (AT&T) and 5:13-cv-01844

19               (Verizon), resolved by Final Judgment entered on February 2, 2015, and are now

20               the subject of this motion.

21           2.   Two cases filed in this District on May 21, 2014, one with AT&T as a co-

22               defendant (Case No. 5:14-cv-02359) and one with Verizon (Case No. 5:14-cv-

23               02360).  The Complaints both named the HTC One M8 and the HTC One max as

24               accused products.  Adaptix ignored repeated requests to join these May, 2014

25               lawsuits with the first cases that are subject of this motion.  These cases are still

26               pending.

27

28

3.   Two cases filed in this District on January 26, 2015, one with AT&T as a co-
defendant (Case No. 5:15-cv-00366) and one with Verizon (Case No. 5:15-cv-
00367).  The Complaints both name LTE-capable HTC products from the first
and second set of cases against HTC, as well as additional LTE-capable HTC
products on the market as of January 26, 2015.  These cases are still pending.

**Apple:**

1.   Two cases filed in the U.S. District Court for the Eastern District of Texas on
March 9, 2012, one with Verizon as a co-defendant (Case No. 6:12-cv-00124) and
one with AT&T (Case No. 6:12-cv-00125).  The Complaints both named the
"Retina display iPad" as an accused product, but the list was later expanded to
include all LTE-capable Apple products on the market as of December 2, 2013.
Both cases were transferred to this District by Order dated March 28, 2013,
assigned Case Nos. 5:13-cv-01776 and 5:13-cv-01777 respectively, resolved by
Final Judgment entered on February 2, 2015, and are now the subject of this
motion.

2.   One case filed in the U.S. District Court for the Eastern District of Texas on
January 4, 2013 with AT&T as a co-defendant (Case No. 6:13-cv-00028).  The
Complaint named the iPhone 5 and iPad mini as accused products, but the list was
later expanded to include all LTE-capable Apple products on the market as of
December 2, 2013, thereby rendering it indistinguishable from Case No. 5:13-cv-
01777.  Despite Apple's multiple requests, Adaptix refused to dismiss this case.
It was transferred to this District by Order dated March 28, 2013, assigned Case
No. 5:13-cv-02023, resolved by Final Judgment entered on February 2, 2015, and
is now the subject of this motion.

3.   Two cases filed in this District on September 26, 2013, one with AT&T as a co-
defendant (Case No. 3:13-cv-04468) and one with Verizon (Case No. 3:13-cv-
04469).  The Complaints both named the iPhone 5s and iPhone 5c as accused

1       products.  Both cases were voluntarily dismissed on October 14, 2013 after this

2       Court granted Adaptix leave to add these products to the earlier-filed Case

3       Nos. 5:13-cv-01776, -01777, and -02023.

4       4.   Two cases filed in this District on January 26, 2015, one with AT&T as a co-

5            defendant (Case No. 5:15-cv-00364) and one with Verizon (Case No. 5:15-cv-

6            00365).  The Complaints both name all LTE-capable Apple products on the

7            market as of January 26, 2015.  Both cases are still pending.

8       None of the cases filed after March 9, 2012 was necessary or appropriate.  The

9    Complaints filed on January 4, 2013, September 26, 2013, and May 21, 2014 were unnecessary,

10   as the additional products could have been added to the existing lawsuits with the Court's leave,

11   which for Apple is ultimately what occurred.  The Complaints filed on January 26, 2015 are

12   inappropriate, as they accuse the same parties and all the same products of infringing the same

13   two patents under the same theories as alleged in the cases that are the subject of this motion.

14       Even more, in connection with the newly-filed lawsuits that re-allege infringement of the

15   '212 and '748 Patents, Adaptix has threatened to pursue litigation against Defendants' customers

16   if Defendants do not agree to Adaptix's settlement demands.  (*See, e.g.*, Ex. 16 [Foster Letter to

17   Hughes *et al.* dated 1/29/2015] ("Adaptix, and we presume AT&T as well, would prefer to

18   resolve this issue without proceeding against end-users of the accused devices in patent

19   infringement lawsuits.").)  In essence, Adaptix has used these repeated filings of duplicative

20   lawsuits simply as a means to harass Defendants into a settlement, on the theory that Defendants

21   will view settlement as more palatable than continuing to expend resources defending themselves

22   (and their customers) against unreasonable lawsuits.  Such conduct should not be rewarded by

23   forcing Defendants to shoulder the burden of the expenses it incurred in defending these

24   unreasonable lawsuits.

25   **IV.   CONCLUSION**

26       Adaptix initiated this litigation with a theory of infringement for which it had no pre-suit

27   evidence that the accused functionality was required to be used—much less actually used—on

28

24

1    AT&T's or Verizon's LTE networks.  Adaptix then began to shift its infringement theory late in

2    the fact discovery period to focus on functionality it had previously concluded should not be

3    accused.  After inappropriately attempting to change its infringement theories once again during

4    expert discovery, Adaptix chose to proceed forward to trial on a theory that was legally and

5    factually unsupportable.  All the while, Adaptix engaged in unreasonable discovery tactics and

6    filed serial lawsuits against Defendants in an effort to increase Defendants' expense and burden

7    in the hope of motivating a settlement.

8            As the Supreme Court observed in *Octane Fitness*, an "exceptional case" is one that

9    "stands out" in light of the applicable law, particular facts, and manner in which the case was

10   litigated.  134 S. Ct. at 1756.  This case easily meets that standard.  Defendants respectfully

11   requests that the Court grant this motion and award Defendants the fees set forth in the

12   accompanying Declarations of Mark D. Selwyn, Fred I. Williams, Christopher A. Hughes,

13   Bryant C. Boren, and Mark D. Flanagan.

14

15   Dated:  February 17, 2015                    */s/ Mark D. Selwyn*
                                                   Mark D. Selwyn (SBN 244180)
16                                                 mark.selwyn@wilmerhale.com
                                                   Craig E. Davis (SBN 221356)
17                                                 craig.davis@wilmerhale.com
                                                   Andrew L. Liao (SBN 271219)
18                                                 andrew.liao@wilmerhale.com
                                                   WILMER CUTLER PICKERING
19                                                     HALE AND DORR LLP
                                                   950 Page Mill Road
20                                                 Palo Alto, CA 94304
                                                   Telephone: (650) 858-6000
21                                                 Facsimile: (650) 858-6100

22                                                 Jonathan L. Hardt (admitted *pro hac vice*)
                                                   jonathan.hardt@wilmerhale.com
23                                                 WILMER CUTLER PICKERING
                                                     HALE AND DORR LLP
24                                                 1875 Pennsylvania Ave. NW
                                                   Washington, D.C. 20006
25                                                 Telephone: (202) 663-6000
                                                   Facsimile: (202) 663-6363
26
                                                   *Attorneys for Defendant and*
27                                                 *Counterclaim-Plaintiff Apple Inc.*

28
                                          25

1

2          /s/ Mark D. Flanagan
           Mark D. Flanagan (SBN 130303)
3          mark.flanagan@wilmerhale.com
           Robert M. Galvin (SBN 171508)
4          robert.galvin@wilmerhale.com
           Geoffrey M. Godfrey (SBN 228735)
5          geoff.godfrey@wilmerhale.com
           Cortney C. Hoecherl (SBN 245005)
6          cortney.hoecherl@wilmerhale.com
           S. Dennis Wang (SBN 261296)
7          dennis.wang@wilmerhale.com
           WILMER CUTLER PICKERING
8            HALE AND DORR LLP
           950 Page Mill Road
9          Palo Alto, CA 94303
           Telephone: (650) 858-6000
10         Facsimile: (650) 858-6100

11         *Attorneys for Defendant and Counterclaim-Plaintiff
           Cellco Partnership d/b/a Verizon Wireless*
12

13         /s/ Fred I. Williams
           Fred I. Williams (admitted *pro hac vice*)
14         fwilliams@akingump.com
           AKIN GUMP STRAUSS HAUER & FELD LLP
15         600 Congress Avenue, Suite 1350
           Austin, TX 78701
16         Telephone: (512) 499-6200
           Facsimile: (512) 499-6290
17

18         James L. Duncan, III (admitted *pro hac vice*)
           jduncan@akingump.com
19         Michael F. Reeder, II (admitted *pro hac vice*)
           mreeder@akingump.com
20         AKIN GUMP STRAUSS HAUER & FELD LLP
           1111 Louisiana St., 44th Floor
21         Houston, TX 77002
           Telephone: (713) 220-5800
22         Facsimile: (713) 236-0822

23         Jayant K. Tatachar (admitted *pro hac vice*)
           jtatachar@akingump.com
24         AKIN GUMP STRAUSS HAUER & FELD LLP
           1700 Pacific Avenue, Suite 4100
25         Dallas, TX 75201
           Telephone: (214) 969-2800
26         Facsimile: (214) 969-4343

27         Danielle C. Ginty (SBN 261809)
           dginty@akingump.com
28         AKIN GUMP STRAUSS HAUER & FELD LLP

                                          26

580 California Street, Suite 1500
San Francisco, CA 94104
Telephone: (415) 765-9500
Facsimile: (415) 765-9510

*Attorneys for Defendants AT&T Mobility LLC,
HTC Corporation and HTC America, Inc.*


*/s/ Christopher A. Hughes*
Christopher A. Hughes (admitted *pro hac vice*)
Christopher.Hughes@cwt.com
John T. Moehringer (admitted *pro hac vice*)
John.Moehringer@cwt.com
Regina M. Lutz (admitted *pro hac vice*)
Regina.Lutz@cwt.com
CADWALADER WICKERSHAM
  & TAFT L.L.P.
1 World Financial Center
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

David R. Clonts (admitted *pro hac vice*)
dclonts@akingump.com
Ashley Edison Brown (admitted *pro hac vice*)
ambrown@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana St., 44th Floor
Houston, TX 77002
Telephone: 713.220.5800
Facsimile:  713.236.0822

Douglas M. Kubehl (admitted *pro hac vice*)
doug.kubehl@bakerbotts.com
Kurt M. Pankratz (admitted *pro hac vice*)
kurt.pankratz@bakerbotts.com
Jonathan B. Rubenstein (admitted *pro hac vice*)
jonathan.rubenstein@bakerbotts.com
James C. Williams (admitted *pro hac vice*)
james.williams@bakerbotts.com
Johnson Kuncheria (admitted *pro hac vice*)
johnson.kuncheria@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Bryant C. Boren, Jr.
bryant.c.boren@bakerbotts.com
Jon V. Swenson
jon.swenson@bakerbotts.com
Gina A. Bibby

27

1    gina.bibby@bakerbotts.com
     BAKER BOTTS L.L.P
2    1001 Page Mill Road
     Building One, Suite 200
3    Palo Alto, CA 94304
     Telephone: (650) 739-7500
4    Facsimile: (650) 739-7699

5    Jennifer C. Tempesta (admitted *pro hac vice*)
     jennifer.tempesta@bakerbotts.com
6    BAKER BOTTS L.L.P
     30 Rockefeller Plaza
7    45th Floor
     New York, NY 10112
8    Telephone: (212) 408-2571
     Facsimile: (212) 259-2571

9
     *Attorneys for Defendant*
10   *AT&T Mobility LLC*

11

12

13              **ATTESTATION OF E-FILED SIGNATURE**

         Pursuant to Civil Local Rule 5-1(i)(3), the attorneys signing above for defendants Apple
14
     Inc., AT&T Mobility LLC, HTC America, Inc., HTC Corporation, and Cellco Partnership d/b/a
15
     Verizon Wireless attest that they have each obtained the concurrence of the other for purposes of
16
     filing these papers in coordinated Case Nos. 5:13-cv-01776-PSG, 5:13-cv-01777-PSG, 5:13-cv-
17
     01778-PSG, 5:13-cv-01844-PSG, and 5:13-cv-02023-PSG.
18

19

20                  **CERTIFICATE OF SERVICE**
21
         I hereby certify that a true and correct copy of the foregoing document has been served
22
     on February 17, 2015 on counsel of record for Adaptix, Inc.
23

24
                    */s/ Mark D. Selwyn*
25                  Mark D. Selwyn

26

27

28
                              28