*[COUNSEL LISTED ON SIGNATURE BLOCK]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ADAPTIX, Inc.,<br>            Plaintiff,<br>v.<br>APPLE, INC., *et al.*,<br>            Defendants. | Case No.  5:13-cv-01776-PSG<br><br>Hearing Date: March 31, 2015, at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, Inc.,<br>            Plaintiff,<br>v.<br>APPLE, INC., *et al.*,<br>            Defendants. | Case No.  5:13-cv-01777-PSG<br><br>Hearing Date: March 31, 2015, at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, Inc.,<br>            Plaintiff,<br>v.<br>AT&T MOBILITY LLC, *et al.*,<br>            Defendants. | Case No.  5:13-cv-01778-PSG<br><br>Hearing Date: March 31, 2015, at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, Inc.,<br>            Plaintiff,<br>v.<br>CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, *et al.*,<br>            Defendants. | Case No.  5:13-cv-01844-PSG<br><br>Hearing Date: March 31, 2015, at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |
| ADAPTIX, Inc.,<br>            Plaintiff,<br>v.<br>APPLE, INC., *et al.*,<br>            Defendants. | Case No.  5:13-cv-02023-PSG<br><br>Hearing Date: March 31, 2015, at 10 a.m.<br>Courtroom 5, 4th Floor<br>Magistrate Judge Paul S. Grewal |

<u>**ADAPTIX OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**</u>

1

# **TABLE OF CONTENTS**

2

3    I.      INTRODUCTION.................................................................................................. 1

4    II.     BACKGROUND .................................................................................................. 1

5    III.    LEGAL STANDARDS ........................................................................................ 4

6    IV.     ARGUMENT ....................................................................................................... 5

7        A.    ADAPTIX DID NOT SOLELY PURSUE A MODE 2 INFRINGEMENT THEORY .......... 5

8        B.    ADAPTIX DID NOT IMPROPERLY "SHIFT" ITS INFRINGEMENT THEORY TO

9        MODE 3 ........................................................................................................................ 9

10       C.    ADAPTIX'S THEORY OF INFRINGEMENT WAS SUPPORTABLE ............................ 11

11       D.    ADAPTIX'S LITIGATION CONDUCT WAS REASONABLE................................... 13

12       E.    ADAPTIX DID NOT UNNECESSARILY FILE SEPARATE LAWSUITS ...................... 14

13       F.    PROPOSED ORDER IS OBJECTIONABLE ................................................ 15

14   V.      CONCLUSION ................................................................................................. 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1299 (Fed. Cir. 2009) ..................................... 12

*Adobe Sys., Inc. v. Wowza Media Sys., Inc.*, No. 11-cv-02243, 2013 WL 9541126, at *1 (N.D. Cal.
    May 6, 2013) .......................................................................................................... 10, 11

*Cambrian Science Corp. v. Cox Commc'n, Inc.* 2015 WL 178417, *8 (C.D. Cal. Jan. 6, 2015) ......... 13

*Cognex Corp. v. Microscan Sys., Inc.*, 2014 WL 2989975 (S.D.N.Y. Jun. 30, 2014) .......................... 5

*Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990) ............................................................ 5

*EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, 2014 WL 3726170 (N.D. Cal. Jul. 25, 2014) ............ 5

*Ericsson, Inc. v. D-Link Systems, Inc.*, 2014 WL 6804861 (Fed. Cir. Dec. 4, 2014) ........................... 4

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2011) ................................. 8

*Gametek LLC v. Zynga, Inc.*, 2014 WL 4351414 (N.D. Cal. Sept. 2, 2014) ..................................... 5

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014) ..................................... 5

*Homeland Housewares, LLC v. Hastie2Market, LLC*, 2014 WL 4400184 (Fed. Cir. Sept. 8, 2014) ..... 5

*IPVX Patent Holdings, Inc. v. Voxernet LLC*, 2014 WL 5795545 (N.D. Cal. Nov. 6, 2014) ............... 8

*Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993) ......................................................... 11, 12

*Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) ..................................... 12

*Momenta Pharm., Inc. v. Teva Pharm.*, 2014 WL 6481668, at *2 (D. Mass Nov. 20, 2014) .......... 9, 10

*NXP B.V. v. Blackberry, Ltd.*, 2014 WL 5823320, at *5-12 (M.D. Fla. Oct. 21, 2014) ...................... 9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.* .................................................................. 4

*Orbis Corp. v. Rehrig Pacific Co.*, 2014 WL 297304 *3 (E.D. Wis. Jan. 27, 2014) ........................ 13

*Ricoh Co. Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325 (Fed. Cir. 2008) ................................... 11

*SiRF Tech., Inc., v. Intern. Trade Com'n,* 601 F.3d 1319 (Fed. Cir. 2010) ................................... 4, 11

*Stragent v. Intel*, No. 6:11-cv-421, 2014 WL 6756304, at *5 .................................................. 7, 10, 13

*Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 6, 2014) ........................... 7

*Yufa v. TSI, Inc.*, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) ................................................... 8

STATUTES

35 U.S.C. § 285 ............................................................................................................. 4, 7

1  Plaintiff, Adaptix, Inc. ("Adaptix"), submits this brief in opposition to the motion of

2  defendants Apple Inc. ("Apple"), HTC America, Inc., HTC Corporation (collectively "HTC"), AT&T

3  Mobility LLC ("AT&T"), and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (together

4  "Defendants") for an award of attorneys' fees pursuant to 35 U.S.C. § 285 ("Motion").

5  **I.      INTRODUCTION**

6  As the Court recognized in its summary judgment decision, this was a close case involving

7  direct infringement of method claims that the Court only resolved after issuance of the *Ericsson v. D-*

8  *Link* opinion by the Federal Circuit in late 2014.  Up until that point, the Court could have agreed with

9  Adaptix that the *SiRF* case controls and denied the motion for summary judgment.  Thus, as set forth

10  in detail below, this was not an exceptional case warranting an award of fees to Defendants.

11  Defendants make numerous factual and legal misstatements in their attempt to show that this

12  case is "exceptional" under 35 U.S.C. § 285.  Contrary to the Supreme Court's recent instructions in

13  the *Octane Fitness* case, however, Defendants fail to analyze properly the totality of the circumstances

14  and misconstrue Adaptix's infringement allegations.  The Court should deny Defendants' Motion

15  because, as set forth below, (1) Adaptix's infringement theories were made in good faith and were

16  well supported by evidence, and (2) Adaptix did not engage in improper discovery or other litigation

17  misconduct.

18  **II.     BACKGROUND**

19  On August 10, 2012, Adaptix served Defendants with its initial infringement contentions

20  ("Original Contentions").  *See* Ex. 3 to Declaration of Craig E. Davis In Support of Defendants'

21  Motion for Attorneys' Fees Pursuant to 35 U.S.C. §285 ("Davis Decl."); Ex. 17 to Declaration of Fred

22  I. Williams In Support of HTC's Motion for Attorneys' Fees Pursuant to 35 U.S.C. §285 ("Williams

23  Decl.").  In these Original Contentions, Adaptix asserted infringement of claims 6-9, 11, and 19-22 of

24  U.S. Patent No. 6,947,748 (the "'748 Patent) and claims 1, 8-13, 16, 18, 19, 23-26, 28 and 30 of U.S.

25  Patent No. 7,454,212 (the "'212 Patent").  Contrary to Defendants' argument,[1] Adaptix's Original

26

27  [1] *See, e.g.*, Defendants' Brief ("Defs' Br. at 1) ("Adaptix filed these litigations based on a theory that
various Apple and HTC products infringe [the patents-in-suit] because they use CQI reporting Mode

28  2-x").

ADAPTIX OPPOSITION TO DEFENDANTS MOTION          1          CASE NOS. 5:13-CV-01776; 01777; 01778; 01844; 02023
FOR ATTORNEYS' FEES

Contentions were <u>not</u> limited to Reporting Mode 2.  The contentions also included portions of the 3GPP LTE Standard ("LTE Standard") that explicitly covered other reporting modes as well, including Reporting Mode 3. *See* Davis Decl., Ex. 3A at 13-15.[2]  Adaptix included these modes because, absent discovery, it was not possible to ascertain which mode(s) the accused handsets were using.  Importantly, Defendants only argument with regards to ███████████████, not that it does not infringe.

On August 19, 2013, in related litigation, the Eastern District of Texas compelled Adaptix to amend its infringement contentions to provide more detailed, product-specific information. *See, e.g.,* E.D. Tex. Case No. 6:12-cv-00017-MHS-CMC, Dkt. No. 154.  Thereafter, on January 21, 2014, Adaptix was approached by Defendants herein who requested that similar amendments be made. *See* Ex. A to Declaration of K. Gannon in Support of Adaptix Opposition to Defendants' Motion for Attorney Fees ("Gannon Decl.") (Letter dated January 21, 2014 from Craig Davis)[3].  Specifically, Defendants asked that Adaptix amend its infringement contentions by January 31, 2014. *Id.*  Adaptix agreed, and served more detailed contentions on the requested date.  As had its Original Contentions, Adaptix's January 31, 2014 infringement contentions alleged infringement of Reporting Modes 2 and 3. *See, e.g.*, Davis Decl., Ex. 12 at 44-51, 53-56. ███████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████  Thus, Mode 3 became the focus of Adaptix's case.

As discovery progressed, disputes arose, some of which required Court intervention and many of which were resolved among the parties.  On April 7, 2014, Adaptix moved (1) to extend fact discovery; (2) to compel production of Defendants' 30(b)(6) witnesses; (3) to compel production of relevant AT&T documents produced in related cases; and (4) to allow for any AT&T witnesses' testimony taken in related actions to be admitted in this action. *See* Dkt. No. 179.[4]  The Court agreed

---

[2] For ease of reference, and to be consistent with Defendants' Motion, Adaptix cites only to the infringement contentions served in -1776 case. *See, e.g.*, Defs' Br. at n.3.
[3] Adaptix includes only one copy of the same letter from each of the Defendants.
[4] For ease of reference, all cites are to 5:13-cv-1776, unless otherwise noted.

1  with Adaptix and extended fact discovery to conduct the outstanding depositions and, while not

2  ordering AT&T to make its production uniform across each case, the Court allowed Adaptix to use

3  any document produced by AT&T in each of the upcoming depositions. *See* Gannon Decl., Ex. B

4  (Transcript of Proceeding dated April 16) at 58:24-25, 59:1-4.  Additionally, the Court agreed with

5  Adaptix and allowed for additional time to review relevant source code of third-party Qualcomm.  *See*

6  Dkt. No. 195.

7       Although Adaptix had to file a Motion to Enforce an Out of District Subpoena[5] in order to

8  obtain access to Qualcomm's witnesses and source code, on June 24, 2014, Adaptix took the

9  deposition of Qualcomm's Rule 30(b)(6) witness, Mr. Anant Hegde.  At his deposition, Mr. Hegde

10  testified that ██████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ██████████████████  *See* Gannon Decl., Ex. C (Transcript of Deposition of Anant

13  Hegde) at 101-02.  Mr. Hegde made clear that ████████████████████████

14  ███████████████████████████████████.  *Id.*  Through source

15  code inspection, Adaptix was also able to verify this fact on or about June 26, 2014.  Dkt. No. 246 at

16  1-2.  Thus, the evidence obtained from Qualcomm confirmed the viability of a contributory

17  infringement theory and Adaptix promptly moved to amend its infringement contentions.  *See* Dkt.

18  No. 246.  Ultimately, the Court denied Adaptix's motion, due to a lack of diligence, without regard to

19  the strength of its argument.  *See* Gannon Decl., Ex. D (Transcript of Proceeding dated July 28) at

20  29:11-15.

21       On September 26, 2014, Defendants filed two motions for summary judgment of non-

22  infringement.  In the first, Defendants claimed that the limitation of "selecting a set of candidate

23  subcarriers" is not found in any accused mode of any accused product.  Adaptix opposed and the

24  Court ultimately agreed with Adaptix, holding that a genuine dispute existed "as to whether the

25  transmission of CQI reports on all subcarriers each time the base station requests information meets

26  this key limitation."  Dkt. No. 403 at 2.

27

28  [5] Case No. 3:14-cv-01148-LAB-BLM, Dkt. 1.

In their second motion, Defendants argued that one cannot directly infringe a method claim based on the *sale* of a device preprogrammed to perform the claimed steps. Adaptix opposed, arguing that the holding in *SiRF Tech., Inc., v. Intern. Trade Com'n,* 601 F.3d 1319 (Fed. Cir. 2010) indicated that Defendants could infringe the asserted method claims through the *use* of the Accused Product. Specifically, in *SiRF*, the Federal Circuit found direct infringement based on Defendants providing the accused devices preprogrammed to automatically perform certain steps of a method claim, making its holding directly applicable to the facts of this case. In granting Defendants' second motion, the Court specifically stated that it "struggled to reconcile" the cases cited in support of the respective arguments made by the parties. *See* Dkt. 405 at 2. During the pendency of these motions, however, "into [the Court's] lap fell a new Federal Circuit decision." *Id.* at 3. The Court went on to hold that the decision in *Ericsson, Inc. v. D-Link Systems, Inc.,* 2014 WL 6804861 (Fed. Cir. Dec. 4, 2014) helped it "reconcile these seemingly contradictory holding[s]" of the cases relied upon by the parties. *Id.* Thus, resolving the second motion was not a "slam dunk." On January 20, 2015 the Court granted summary judgment of no direct infringement in favor of Defendants. Dkt. 405. Thereafter, on February 17, 2015, Defendants filed the instant motion.

### III.   **LEGAL STANDARDS**

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court held that, under 35 U.S.C. § 285, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 134 S. Ct. 1749, 1756 (2014). The Supreme Court stated that, even under the preponderance of the evidence standard imposed in that case, an award of fees is nevertheless "the rare case." *Id.* at 1756-57.

The Supreme Court explained that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* A non-exclusive list of factors identified by the Court include, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at

n.6 (citation and internal quotations omitted).  Thus, a case is only exceptional "in the rare case in which a party's unreasonable conduct—while not necessarily sanctionable—is nonetheless so 'exceptional' as to justify an award of fees" or is "a case presenting either subjective bad faith or exceptionally meritless claims."  *Id.* at 1757.

In determining whether or not a case is exceptional a district court should consider the totality of the circumstances.  *Id.* at 1756.  "Although questions of law may in some cases be relevant to the § 285 inquiry, that inquiry generally is, at heart, 'rooted in factual determinations.'"  *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1749 (2014) (*quoting Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990).  To be clear, however, "fee awards are not to be used "as a penalty for failure to win a patent infringement suit."  *Octane Fitness*, 134 S. Ct. at 1753 (citation omitted).

In addition, while the Court in *Octane* reduced the burden of proof required to obtain attorney's fees under § 285, courts continue to hold claims of baselessness to a high bar.  Where, as here, Adaptix has set forth a good faith claim supporting its position, courts have consistently refused to find such claims "exceptionally meritless."  *See, e.g.*, *EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, 2014 WL 3726170 (N.D. Cal. Jul. 25, 2014); *Gametek LLC v. Zynga, Inc.*, 2014 WL 4351414 (N.D. Cal. Sept. 2, 2014).  Appropriately, the vast majority of cases in which attorney's fees are awarded involve substantial litigation misconduct.  *See, e.g.*, *Homeland Housewares, LLC v. Hastie2Market, LLC*, 2014 WL 4400184 (Fed. Cir. Sept. 8, 2014); *Cognex Corp. v. Microscan Sys., Inc.*, 2014 WL 2989975 (S.D.N.Y. Jun. 30, 2014).  As noted by Judge Seeborg, "post-*Octane* decisions awarding fees have concerned egregious behavior."  *Gametek v. Zynga*, 2014 WL 4351414, at *3.  Adaptix did not engage in any such behavior in this case.

## IV.  **ARGUMENT**

### A.  ADAPTIX DID NOT SOLELY PURSUE A MODE 2 INFRINGEMENT THEORY

Defendants first argue that, for two years, Adaptix solely pursued a Mode 2 infringement theory. Defs' Br. at 6-14.  According to Defendants, Adaptix did not allege that Mode 3 infringed until Adaptix served amended infringement contentions in January 2014.  *Id.* at 14.  Defendants are incorrect.  In its earliest Infringement Contentions, served in August 2012, Adaptix repeatedly mapped

the patents-in-suit against, *inter alia*, Modes 3-0 and 3-1:

Table 7.2.1-1: CQI and PMI Feedback Types for PUSCH reporting Modes

|  |  | PMI Feedback Type | | |
|---|---|---|---|---|
|  |  | No PMI | Single PMI | Multiple PMI |
| PUSCH CQI Feedback Type | Wideband (wideband CQI) |  |  | Mode 1-2 |
| | UE Selected (subband CQI) | Mode 2-0 |  | Mode 2-2 |
| | Higher Layer-configured (subband CQI) | Mode 3-0 | Mode 3-1 |  |

\* \* \*

○  Mode 3-0 description:

- A UE shall report a wideband CQI value which is calculated assuming transmission on set $S$ subbands

- The UE shall also report one subband CQI value for each set $S$ subband. The subband CQI value is calculated assuming transmission only in the subband

- Both the wideband and subband CQI represent channel quality for the first codeword, even when RI>1.

- For transmission mode 3 the reported CQI values are calculated conditioned on the reported RI. For other transmission modes they are reported conditioned on rank 1.

○  Mode 3-1 description:

- A single precoding matrix is selected from the codebook subset assuming transmission on set S subbands

- A UE shall report one subband CQI value per codeword for each set $S$ subband which are calculated assuming the use of the single precoding matrix in all subbands and assuming transmission in the corresponding subband.

- A UE shall report a wideband CQI value per codeword which is calculated assuming the use of the single precoding matrix in all subbands and transmission on set $S$ subbands

- The UE shall report the single selected precoding matrix indicator

- For transmission mode 4 the reported PMI and CQI values are calculated conditioned on the reported RI. For other transmission modes they are reported conditioned on rank 1.

*See* Davis Decl., Ex. 3A at 24-26, 50-52, 62-64, 78-80, 93-94, 121-23, 140-42, 154-56, 171-73, 189-

1    Defendants' attempts to characterize Adaptix as accusing Mode 2 exclusively for two years until

2    inserting Mode 3 at the end of the case is simply incorrect.  As set forth above, Mode 3 was accused as

3    of Adaptix's earliest contentions in these cases.[6]

4         Defendants seize upon the following statement from these contentions as limiting Adaptix's

5    infringement theory to Mode 2:

6         UEs can select sets of subcarriers (organized as PRBs, which in turn are organized as
          subbands) in various ways (***e.g., including but not limited to*** Mode 2-0, Mode 2-1 and
7         Mode 2-2) and report CQI information for the selected subcarriers.

8    Defs' Br. at 7 (emphasis added).  Plainly, the phrase "e.g., including but not limited to" does not mean

9    "only" or "solely" or "exclusively."  This is particularly so where, as set forth above, the contentions

10   affirmatively map against Mode 3.  Certainly, of the three modes specified by the LTE standard,

11   Adaptix focused its aim initially at Mode 2.  But, consistent with Adaptix's original infringement

12   contentions, as of the first deposition taken in these cases, Mode 3 was one of the targets of

13   Defendants' own discovery.  For example, in Defendants' Rule 30 (b)(6) notice of deposition of

14   Adaptix, Defendants listed the following topics:

15   **TOPIC NO. 52:**
         All evidence that Adaptix contends shows that the Accused Products, when employing
16       aperiodic reporting Modes 3-0 and 3-1, "select a set of candidate subcarriers" (as that
         phrase has been construed by the Court).
17

18   *See* Gannon Decl., Ex. E at 2-3.  Further, Defendants deposed Adaptix's Rule 30(b)(6) witness

19   regarding Mode 3 at the ensuing deposition.  Gannon Decl., Ex. F (Dep. of Curtis Dodd Vol. I) at 164-

20   67.  Similarly, Adaptix's technical expert included an infringement analysis of Mode 3 in his original

21   report.  *See, e.g.*, *id.*, Gannon Decl., Ex. G (Excerpts of Caloyannides Expert Report) at 67-69.  The

22   fact that, ultimately, Adaptix opted to go to trial on Mode 3, as set forth in the Original Contentions,

23   rather than Mode 2, does not form the basis for an award of fees. *See, e.g.*, *Stragent, LLC v. Intel

24   Corp.*, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 6, 2014) ("[Defendant] argues that [Plaintiff] delayed

25   in disclosing certain positions and in abandoning certain other claims and positions, and that this

26   ─────────────────────────

27   [6] As Defendants note (Defs' Br. at footnotes 2-3), all of the contentions of each set of contentions are
     substantively identical.  As a result, Adaptix has not submitted each separate set of contentions.
28   Instead, contentions from the -01776 case are used as representative of the others.

1    constituted litigation misconduct.  It did not.").

2         Defendants next argue that Adaptix "had an obligation to conduct pre-suit testing to determine

3    whether Mode 2 functionality was being used by Defendants' products on AT&T's and Verizon's

4    LTE Networks."  Defs' Br. at 8-14 (emphasis added).  Defendants are incorrect.  The LTE standard

5    describes LTE-capable devices and base stations that communicate using Reporting Modes 2 and 3.

6    Davis Decl., Ex. 3 at 33-42.  Adaptix conducted a due diligence review of the patented technology

7    herein with respect to the LTE standard prior to filing suit.  Declaration of Curtis Dodd, ¶ 6.  After

8    filing suit, Adaptix's served its formal infringement contentions mapping the same.  *See* Davis Decl.,

9    Ex. 3.[7]

10        Defendants' repeated and nuanced references to the alleged "optional" nature of Mode 2 are

11   irrelevant.  Defs' Br. at 8.  The LTE standard involves the use of both Reporting Modes 2 and 3.

12   Davis Decl., Ex. 2 at 33-42.  Because the LTE standard uses both Reporting Modes 2 and 3, Adaptix's

13   investigation of the standard determined that use of each of these Reporting Modes infringed its

14   patents.  Accordingly, the sections of the LTE standard covering Reporting Modes 2 and 3 were

15   included in Adaptix's Original Contentions.  *See* Davis Decl., Ex. 3.  As a result, Defendants' focus on

16   the lack of testing that was done regarding Mode 2 prior to Adaptix filing suit is irrelevant.[8]

17        Defendants' complaints that Adaptix baselessly continued alleging Mode 2 of infringement are

18   equally unfounded.  Adaptix originally claimed that Mode 2 infringed both the asserted apparatus and

19   method claims.  *See, e.g.*, Davis Decl., Ex. 3 at 1-23, 72-88 ('212 chart).  As Defendants presumably

20   know—yet fail to address—to infringe an apparatus claim an accused device must only be capable of

21   operating in an infringing manner.  *See, e.g.*, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197,

22   1204 (Fed. Cir. 2011).  It is uncontroverted that the ████████████████████████████████

23   *See* Gannon Decl., Ex. C (Hegde Tr.) at 101-02.  Additionally, Adaptix in good faith investigated

---

[7] The pre-suit charts from which the formal infringement contentions were derived are listed on
Adaptix's privilege log.  Should the Court wish to review same, Adaptix submits that it be permitted
to file the documents *in camera* in order to avoid waiving the privilege.

[8] In support, Defendants cite *IPVX Patent Holdings, Inc. v. Voxernet LLC*, 2014 WL 5795545 (N.D.
Cal. Nov. 6, 2014) and *Yufa v. TSI, Inc.*, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014).  Unlike here,
neither the *IPVX* nor the *Yufa* case (or any other case cited by Defendants) involve infringement of
devices that practiced a standard such as the 3GPP LTE Standard.

these claims through the course of discovery which remained open until June 2, 2014.[9]  In fact, as late as June 2014 Adaptix continued to discover evidence of Mode 2's potential use.  *See* Gannon Decl., Ex. C (Hegde Tr.) at 101-02.  After discovery closed, however, ████████████  ████████████ ██████████████████████████████ Adaptix made a strategic business decision to drop Mode 2 as an accused functionality.   Such conduct is not nefarious or improper litigation.  *See Momenta Pharm., Inc. v. Teva Pharm.*, 2014 WL 6481668, at *2 (D. Mass Nov. 20, 2014).  Discovery in these cases served its stated purpose of allowing Adaptix to streamline the case by relinquishing its claim against Mode 2.  *See NXP B.V. v. Blackberry, Ltd.*, 2014 WL 5823320, at *5-12 (M.D. Fla. Oct. 21, 2014).

Finally, Defendants' claim that ████████████████████████ is irrelevant.  As an initial matter, Defendants point to ████████████████████ while simultaneously alleging that Adaptix's inadvertent use of evidence from other litigations in the cases shows Adaptix's unscrupulous litigation tactics.  Defs' Br. at 10.  That aside, ████████████████ ████████████████████████████████████████████████. Davis Decl., Ex. 9 at 1. ████████████████████████████████████████████ ████████████████████████████████ Davis Decl., Ex. 1 at 6-11.  As discovery has shown, and Adaptix noted in its summary judgment opposition, the ████████████ ████████████████████████████████████ As a result, a finding that at one point in time, ████████████ does not indicate that it had never been used, would never be used, or even that it is not used ████████████████████████████ █████. As discovery revealed, ████████████████████████████

B.   ADAPTIX DID NOT IMPROPERLY "SHIFT" ITS INFRINGEMENT THEORY TO MODE 3

As their second argument, Defendants assert that, with just four months before the end of fact discovery, Adaptix began shifting its infringement theory from Mode 2 to Mode 3. Defs' Br. at 14-17.

---

[9]The close of fact discovery was on May 2, 2014 but Court allowed for Adaptix to continue discovery for limited purposes until June 2, 2014, and for Adaptix to take discovery of non-party Qualcomm until June 27, 2014.  Dkt. 223, 13-cv-1776, Dkt. No. 223).

1   As the basis for this argument, Defendants assert that "Adaptix's infringement contentions did not

2   discuss Mode 3 as an infringement theory until January 31, 2014 when Adaptix served amended

3   infringement contentions . . ." *Id.* at 14.  As set forth in the preceding section, however, this is

4   incorrect.  In its Original Contentions served in August 2012, Adaptix mapped the asserted claims

5   against not just Mode 2, but Mode 3 as well.  Thus, Defendants' entire argument is unfounded.

6   Moreover, that Adaptix narrowed its infringement claims to Mode 3 as discovery proceeded was not

7   improper.  *See, e.g.*, *Adobe Sys., Inc. v. Wowza Media Sys., Inc.*, No. 11-cv-02243, 2013 WL 9541126,

8   at *1 (N.D. Cal. May 6, 2013) (following discovery, party was "in a position to determine its strongest

9   claims" and directed to narrow its claims thereto); *Stragent v. Intel*, No. 6:11-cv-421, 2014 WL

10   6756304, at *5 ("[Defendant] argues that [Plaintiff] delayed in disclosing certain positions and in

11   abandoning certain other claims and positions, and that this constituted litigation misconduct.  It did

12   not."); *Momenta v. Teva*, 2014 WL 6481668, at *2 (not exceptional under Section 285 for a party to

13   drop claims during litigation).[10]

14          On pages 15-17 of their brief, Defendants recount that certain parts of Adaptix's expert report

15   were ordered stricken by the Court.  Defs' Br. At 15-17.  In particular, Defendants assert that "[w]hen

16   the amended report was served on August 14, it confirmed that Adaptix had completely abandoned

17   Mode 2 in favor of a Mode 3 theory of direct infringement for method claims only, the theory that

18   Adaptix would unsuccessfully attempt to take to trial."  *Id.* at 17.  Notably, Adaptix's original

19   infringement contentions mapped the asserted method claims directly against Mode 2 and Mode 3.

20   *See, e.g.*, Davis Decl., Ex. 3 at 9-20 ('748 chart), 12-24 ('212 chart).  These include the same claims

21   that ultimately would have gone to trial.  Thus, these claims and contentions were present throughout

22   the case.  The reason Adaptix withdrew its claims against Mode 2 is simply because, during discovery,

23

24   ---

    [10] On page 15 of their brief, Defendants reproduce a portion of a document produced by Adaptix

25   during discovery.  Upon review of this document, Adaptix believes that it was prepared in anticipation
    of litigation and is privileged.  Pursuant to the relevant clawback section of the Protective Orders

26   entered in these cases, Adaptix has requested that the document be returned to Adaptix.  *See* Gannon
    Decl., Ex. J.  As a result, Adaptix requests that this document not be considered with respect to the

27   present motion.  To the extent that consideration is given, Adaptix notes that the document is
    inconsistent with Adaptix's original infringement contentions which, as set forth above, map the

28   asserted claims against Mode 3.

1   it learned that ████████████████████████████████████████

2   ███████████████████████.[11]  Thus, as in *Adobe v. Wowza*, Adaptix chose to pursue its

3   strongest claim and streamline the case by withdrawing its Mode 2 claims.  As the above

4   demonstrates, Adaptix did not pursue a policy of ever-shifting claims as Defendants would have the

5   Court believe.  To the contrary, the Mode 3 direct infringement claims have been asserted since the

6   beginning of the cases.

7          C.     ADAPTIX'S THEORY OF INFRINGEMENT WAS SUPPORTABLE

8          Defendants next argue that the theory of infringement relied upon Adaptix was unsupportable.

9   Defendants are incorrect.  Defendants' assertion that the issue of infringement was an open and shut

10  case rendering the case exceptional is belied by the summary judgment briefing, hearing and opinion.

11  In their motion, Defendants relied primarily upon the Federal Circuit's opinions in *Joy Techs., Inc. v.*

12  *Flakt, Inc.*, 6 F.3d 770 (Fed. Cir. 1993) and *Ricoh Co. Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325

13  (Fed. Cir. 2008).  *See, e.g.*, Dkt. 374 at 9-10.  In response, Adaptix argued that Defendants directly

14  infringe under *SiRF Tech., Inc. v. Int'l Trade Com'n*, 601 F.3d 1319 (Fed. Cir. 2010).  *See, e.g.*, Dkt.

15  341 at 7-9.  The Court permitted oral argument on the motion.  At the hearing, considerable time was

16  spent on arguing which case(s) controlled, thus demonstrating that a legitimate dispute existed.  *See*

17  Dkt. 374 at 54-99.

18         Further, in its opinion granting the motions for summary judgment, the Court stated, *inter alia*,

19  as follows:

20         Citing to the Federal Circuit's decision in *Ricoh Co. Ltd. v. Quanta Computer, Inc.*,
           Defendants argued that they could not have directly infringed because it is undisputed
21         that they merely sold preprogrammed accused handsets and did not perform any of the
           required steps.  Adaptix countered with the decision by the Federal Circuit in *SiRF*
22         *Technology*, in which the court found direct infringement based on the sale of accused
           devices preprogrammed to automatically perform certain steps at issue.  As the under
23         signed struggled to reconcile these holdings following a spirited oral argument, into his
           lap fell a new Federal Circuit decision issued on December 4, 2014 – *Ericsson, Inc. v.*
24         *D-link Systems, Inc.* – that reconciled these seemingly contradictory holdings for him.

25  Dkt. 405 at 2-3 [footnotes omitted].  Thus, the Court agreed with Adaptix that *SiRF* "found direct

26  infringement based on the sale of accused devices preprogrammed to automatically perform certain

27  _____
    [11] *See* Declaration of Michael Caloyannides (10/17/14), Dkt. 397-1 at ¶ 19; Declaration of Nigel Jones
28  (2/18/15) at ¶¶ 7-8.

1  steps at issue."  In other words, Adaptix's theory was supported by *SiRF*.  Nonetheless, the Court

2  found that *Ericsson* is now controlling on this issue.  Adaptix's reliance on *SiRF* does not make this

3  case exceptional.

4       Notwithstanding the Court's statement above, Defendants argue that, "for *SiRF* to stand for

5  [Adaptix's] proposition, the Federal Circuit sitting *en banc* would have needed to hold that *SiRF*

6  overruled cases such as *Joy Technologies* [and] *Ricoh* . . . that stand for the principle that the sale of a

7  product capable of performing the patented method is *not* an act of infringement."  Defs' Br. at 18.

8  Notably, *Ericsson* was not an *en banc* opinion.  Thus, in turn, *Ericsson* cannot overrule *SiRF*.  In any

9  event, in the excerpt from *Ericsson* quoted on page 19 of Defendants' brief, the Federal Circuit

10 distinguished *SiRF* because "Ericsson cannot point to any evidence in the record that D-Link

11 performed the infringing steps, or that any of its customers were under the direction or control . . .. "

12 In contrast, in these cases, Adaptix submitted both:  (1) circumstantial evidence that Defendants had

13 used the accused handsets, and (2) evidence that Defendants exercised control, via the base stations, of

14 their customers.  *See, e.g.*, Dkt. 341 at 4-7.  Thus, the present case is unlike the facts of *Ericsson*.

15      Finally, in this section of their brief, Defendants argue that Adaptix presented "no theory or

16 evidence that Defendants' own use of the accused products could support Adaptix's claim for

17 substantial damages through the life of the patents."  In order to prove Defendants liable for

18 infringement, Adaptix does not need to show they are also liable for "substantial damages for the life

19 of the patents."  For infringement, Adaptix need only show that a claim reads on the accused method

20 or apparatus.  *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1299 (Fed. Cir. 2009).  Adaptix submitted

21 more than sufficient circumstantial evidence from which a jury could infer that Defendants have used

22 the accused handsets in the LTE networks of AT&T and Verizon.  *See, e.g.*, No. -01776, Dkt. 341 at

23 4-7; No. -01777, Dkt. 381 at 5-6; No. -01844, Dkt. 311 at 4-7.  As recognized by the Federal Circuit,

24 circumstantial evidence is often the best type of evidence in patent cases.  *Moleculon Research Corp.*

25 *v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) ("[c]ircumstantial evidence is not only sufficient,

26 but may also be more certain, satisfying and persuasive" than direct evidence).  Thus, Defendants'

27 lack of evidence argument should be rejected.

28

1    D.    ADAPTIX'S LITIGATION CONDUCT WAS REASONABLE

2         Defendants' also erroneously allege that Adaptix has engaged in discovery misconduct

3    resulting in "significant added expense."  Defs Br. at 21.  First, a motion under § 285 is not designed

4    "to revisit discovery orders or a second bite at imposing sanctions that could have been properly

5    imposed for violation of a party's discovery obligations."  *Cambrian Science Corp. v. Cox Commc'n,*

6    *Inc.* 2015 WL 178417, *8 (C.D. Cal. Jan. 6, 2015).  Furthermore, nothing about Adaptix's discovery

7    conduct was improper or exceptional under *Octane Fitness*.  As evidence of Adaptix's alleged

8    improper conduct, Defendants' point to five motions to compel that were before this Court. *See*

9    Motion at 20-21.  The fact that a complicated and high stakes patent litigation involves discovery

10   disputes, however, does not indicate misconduct by either party.  *See Orbis Corp. v. Rehrig Pacific*

11   *Co.*, 2014 WL 297304 *3 (E.D. Wis. Jan. 27, 2014) ("it is often the nature of litigation when all

12   parties involved have difficulty in resolving their differences").  Additionally, the objective facts—and

13   even statements by this Court—indicate that Adaptix's conduct during discovery was appropriate and

14   professional.  For example, Apple's and Verizon's motion to compel Adaptix to produce written

15   discovery responses (Dkt. 172) was a genuine dispute that was resolved by a stipulation proposed by

16   Adaptix.  In granting the parties stipulation this Court commended Adaptix's efforts in reaching a

17   compromise expressly stating that "such compromise speaks to good faith efforts on both sides."  Dkt.

18   177.  Such conduct weighs against an exceptional case. *See*, *e.g.*, *Stragent*, 2014 WL 6756304, at *6.

19        The other discovery motions pointed to by Defendants were also genuine disputes, in some

20   cases resolved based on Adaptix's proposals, such as with the motion to compel a deposition of Matt

21   Vella.  Other motions resulted from Defendants' own actions.  For example, as Adaptix pointed out in

22   its briefing, AT&T's motion to strike portions of Dr. Caloyannides report for relying on documents

23   produced in one of the other AT&T suits resulted from the extremely confusing and duplicative

24   manner in which AT&T produced its documents.  *See* No. -01777, Dkt. 386.  Nevertheless, Adaptix

25   immediately provided AT&T with documents produced in the case at issue that were duplicative of

26   the cited documents from the "ATTM" production, eliminating any issue of impropriety.  *See* Gannon

27   Decl., Ex. H.

28

Finally, Defendants' allegations with respect to "Project Angel" are equally unfounded. Defendants' have not proven that Adaptix engaged in any misconduct regarding the acquisition of the technology related to the patents-in-suit.  In fact, Adaptix has since provided metadata associated with conception documents that predate the dates identified by Defendants as the dates that "Project Angel" was allegedly derived.  *See* Gannon Decl., Ex. I.  This evidences that the technology related to the asserted patents could not have been improperly derived from "Project Angel."  As a result, Defendants' claims that Adaptix's discovery practices were "exceptional" and caused them unnecessary expense are misleading and incorrect.  Absolutely nothing about Adaptix's litigation of these cases indicates that it engaged in "exceptional" conduct warranting the award of attorney's fees pursuant to Section 285.

E.      ADAPTIX DID NOT UNNECESSARILY FILE SEPARATE LAWSUITS

Defendants' final argument is that Adaptix engaged in improper litigation tactics by filing "almost-identical patent infringement lawsuits" against Defendants that have "accused products that are essentially the same with regard to the accused functionally." *See* Motion at 22.  This argument is belied by Defendants' own conduct.  For example, each time that Adaptix sought leave to add newly-released products to the existing suits, Defendants vigorously opposed such additions.  On one such exemplary occasion, in response to Adaptix's argument that judicial economy would favor adding the iPhone 5s and 5c to on-going cases -1776 and -2023, rather than including them in a new case, counsel for Apple stated to the Court that "[t]he judicial economy horse that might otherwise caution against generating additional lawsuits bolted long ago, relegating Adaptix's argument to little more than a belated attempt to close the stable door.  Defendants' therefore respectfully request that the Court deny Adaptix's motion to add the iPhone 5s and 5c to this litigation." Dkt. 138 at 4.  Defendants' also requested that the Court set a deadline for adding additional products to the current cases, which the Court granted.  Dkt. 140.  The "serial" cases that Defendants' now complain of are a direct result of their tactic to oppose the addition of new substantially similar products to the current cases at every opportunity.

In contrast, Adaptix has reached stipulations with other similarly situated defendants that avoid

1  the expense and burden—to both parties—of bringing additional suits by simply agreeing that new

2  products operate in a substantially similar manner to those already accused.  *See, e.g.*, E.D. Tex., Case

3  6:12-cv-00017-RWS-CMC, Dkt. 213 (filed July 16, 2014).  As evidenced by Adaptix's course of

4  dealings in other cases, it prefers not to go through the time and expense of filing a new case against

5  existing defendants just to seek relief against a new product.  Defendants conduct in the present cases,

6  however, prevented Adaptix from doing so, and directly resulted in the "duplicative" cases they now

7  complain of.

8  F.  PROPOSED ORDER IS OBJECTIONABLE

9  Defendants have submitted a proposed order stating that they are to be awarded the amount of

10  fees set forth in their respective attorney declarations.  In their declarations, Defendants' counsel have

11  set forth the gross amount of fees that they say they have incurred and are entitled to should their

12  Motion be granted.  Defendants have not provided Adaptix (or the Court) with the underlying billing

13  records from which Adaptix (and the Court) may determine the reasonableness of the fees.  *See Water*

14  *Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 674 (Fed. Cir. 1988) (stating for court to determine

15  reasonableness of attorney's fees, must be some evidence to support reasonableness of billing rate

16  charged and number of hours expended).

17  **V.  CONCLUSION**

18  For the reasons set forth above, Adaptix requests that Defendants' motions be denied.

19

20

21

22

23

24

25

26

27

28

1   Dated:  March 3, 2015                    **ADAPTIX, INC.**

2

3                                           By:   _/s/ Paul J. Hayes_____
                                            Paul J. Hayes (*pro hac vice*)
                                            Kevin Gannon (*pro hac vice*)
4                                           **HAYES MESSINA GILMAN HAYES, LLC**
                                            200 State Street, 6th Floor
5                                           Boston, MA 02109
                                            phayes@hayesmessina.com
6                                           kgannon@hayesmessina.com
                                            Telephone: (617) 439-4200
7
                                            Christopher D. Banys
8                                           Jennifer L. Gilbert
                                            **BANYS, P.C.**
9                                           1032 Elwell Court, Suite 100
                                            Palo Alto, CA 04303
10                                          cdb@banyspc.com
                                            jlg@banyspc.com
11                                          Telephone: (650) 308-8505

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28